### E. T. GALLAGHER v. THE STATE.

*No. 573. Decided April 6.*

1. **Robbery—Evidence—Harmless Error.**—On a trial for robbery, where a witness for the State was permitted, over objections of defendant, to testify, that the reason why he noticed the parties charged with the robbery at his saloon so that he was afterwards able to identify them, was, that some negroes had bought a can of beer, and after it was poured out, set it down, and while they were squabbling defendant picked up the can and drank some of it, defendant's objection being, that the testimony was calculated to prejudice him before the jury, *Held*, that while not strictly admissible as evidence, yet in view of the other testimony in the case, its admission could not have prejudiced defendant, nor have affected the result.

2. **Same—Evidence Sufficient.**—See evidence stated, *Held*, amply sufficient to support a conviction for robbery.

APPEAL from the District Court of Bell. Tried below before Hon. W. A. BLACKBURN.

This appeal is from a conviction for robbery, the punishment being assessed at seven years' imprisonment in the penitentiary.

The following is substantially the testimony as to the important features of the case:

Frank O'Briant, the party robbed, testified, that he reached Temple at noon on Saturday, December 1, 1894, having $23 in his pocket. He went from the train to Mike Glenn's saloon. There he met defendant, who told him his name was Charles Williams, and wrote it for him on a card. He and defendant staid about the saloon, drinking, till after dark. He changed a $20 bill at the saloon during the time. After defendant left, he went up town, between 9 and 10 o'clock, to Koch's saloon, to get sleeping apartments, and staid there that night. After he went down into the saloon, on Sunday morning, he met defendant and A. A. Gallagher, and gave defendant 15 cents to buy something to eat. Was with the parties at Koch's saloon that afternoon. He says: "About dark, myself and a little Dutchman went out of the back door of Koch's saloon to wet. We went out alone, and no one came out of the door while we were out there. I turned to the right when I got outside, and stood about two feet from the wall; the little Dutchman was between me and the door. We were making water. Before I knew they were there, defendant and A. A. Gallagher grabbed me. Defendant caught me around the shoulders from behind, and A. A. Gallagher caught me by the right arm, until defendant (E. T. Gallagher) got me pulled back so he could hold me good. Then A. A. Gallagher held me by the right arm, put his hand in my pocket, and took my money out of my pants and watch pocket. * * * I was scared, and asked them not to hurt me. * * * They also took my pistol. I know I had more than $10 in my pocket when they robbed me." He says, the little Dutchman did not say a word or do anything while the robbing was going on, and that when he went back into the saloon and reported the robbery, the Dutchman disappeared, and he had never been able to find him since. He thinks this little Dutchman was acting with the parties. He then hunted up the officers, told them of the robbery, and described the men. On Monday morning he saw and identified the parties at the city hall.

John Grant, deputy marshal, testified, that O'Briant related the occurrence to him and described the parties, and that he arrested the defendant and found $1.50 in silver on his person. That on the day of, and before the robbery, defendant had told him he had no money, and asked him to give him some money to get something to eat with.

W. B. Owens, also a deputy city marshal, testified to his arrest of A. A. Gallagher.

Mike Glenn testified to O'Briant's being at his saloon on Saturday. Defendant and A. A. Gallagher were at the saloon at the same time. He says: "When I first saw defendant there, he was with some negroes in the saloon, talking. The negroes bought a can of beer, set it down on the head of a barrel, and got to talking; and while they were talking defendant picked up the can of beer and drank it. This caused me to notice him particularly, and I am positive defendant is the man."

He heard of the robbery the next day, and went with Mr. Owens to the calaboose, and there recognized defendant and A. A. Gallagher as the same parties who were with O'Briant at his saloon.

Robert Robertson testified, that he was at Koch's saloon; saw O'Briant and E. T. and A. A. Gallagher there. Saw O'Briant get up and go out into the back yard. Defendant and A. A. Gallagher went out with him. In a very few minutes O'Briant came back into the saloon and said he was robbed. He went with him to Deputy Marshal Grant, and afterwards pointed out defendant to Grant as one of the men who was at the saloon before the robbery.

E. T. Gallagher testified, in his own behalf, as follows: "I am the defendant in this case, and am 24 years old. I was in Temple, Texas, on December 1, 1894, and saw Frank O'Briant there on Sunday, December 2, about Koch's saloon. He was there nearly all day; he was drunk. I know the little Dutchman and A. A. Gallagher. I saw Frank O'Briant in the back yard of Koch's saloon, on Sunday night, after dark. I was out there in the back yard myself. While out there, I saw A. A. Gallagher and the little Dutchman rob O'Briant. After they got his money and pistol they ran out at the doorway in the fence; and I followed them to the freight platform of the Santa Fe Railway, about 100 yards. There they divided the stuff, and told me to 'come on, and let's get out of town,' and they started off towards the Katy depot. I told them no; that I was not going to leave town; that I had not done anything to leave town for, and I turned around and went up to the Palace saloon, where I was arrested. I did not rob O Briant, and did not have anything in the world to do with it. They threw him down while they were robbing him. I did not try to get out of town; if I had, I could have done so. The little Dutchman is a thief; he stole my shirt on Sunday morning, and I had to buy it back from him; gave him 25 cents for it. I was in Temple hunting work. I have a widowed mother and two sisters dependent upon me. I was never arrested on any charge before."

*Saunders & Durrett*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—The appellant was convicted in the District Court of Bell County under an indictment charging him with robbery, and his punishment assessed at seven years in the penitentiary, and from the judgment and sentence he prosecutes this appeal.

Several bills of exceptions were reserved, but all that are necessary to be considered involve the question as to the admissibility of the testimony of Mike Glenn. The court permitted the State to prove, over the objections of the defendant, that on the night of the alleged robbery, and a little while before it is said to have occurred, he saw defendant and his brother, A. A. Gallagher, with Frank O'Briant, the

prosecutor, in his saloon, at Temple, and that they left there together; and after the arrest of the two Gallaghers, he went to the calaboose and recognized them as the same parties who, with O'Briant, left his saloon together on the night of the alleged robbery.   He assigned as a reason why he noticed them, that at the time there were some negroes in the saloon, who had bought a can of beer, and after it was poured out they got to squabbling about it, and while engaged in the squabble, defendant picked up the can and drank some of the negroes' beer without asking their consent.   The defendant objected to this latter portion of the testimony, because, as he alleged, it was evidence of theft of the beer, and not connected with the alleged robbery, and was calculated to prejudice the defendant before the jury.   The court, in explaining the bill of exceptions, states that the drinking of the beer was a trivial circumstance, not involving theft, and was only used by the witness as the circumstance that called his attention to the parties, and enabled him to identify them afterwards.   To our minds, this testimony in regard to the beer did not show that the defendant was guilty of theft of the same, and, while strictly not admissible as evidence, yet, in view of the testimony in this case, it could not have prejudiced the defendant or have affected the result.   The proof that the prosecutor had been robbed was complete, and the defendant was identified as one of the parties engaged in the robbery, and he himself admits that he was present at the time in the back yard of the saloon, and saw A. A. Gallagher and the "Little Dutchman" rob O'Briant; that they took his money and pistol away from him, and ran out of the doorway to the back yard of the fence, and that he followed them, and saw them divide the "stuff."   This conduct of the defendant was certainly strange, if he was an innocent man, as he claimed to be.   Moreover, the proof shows that prior to the robbery he had no money, but when arrested, shortly after the robbery, there was found on his person $1.50 in silver and a $5 gold piece, which corresponded with the money which had been taken from the prosecutor.   In the whole record there is no evidence contravening the State's case, except the testimony of the defendant.   That itself, while not a confession of guilt, is in its nature corroborative of the State's case.

The judgment is affirmed.

*Affirmed.*

HURT, Presiding Judge, absent.