## DETROIT FIDELITY & SURETY CO. v. PIPPINS & CLARKSON et al.

### No. 1124.

Court of Civil Appeals of Texas. Waco.
Feb. 11, 1932.

Modified on Rehearing and All Motions for Rehearing Denied March 24, 1932.

Second Motion for Rehearing Denied April 21, 1932.

Albert B. Hall, of Dallas, for appellant.

Thompson, Knight, Baker & Harris, Burgess, Burgess, Chrestman & Brundidge, Bell & Clark, and R. G. Storey, all of Dallas, Thos. R. Bond and Coon & Barnes, all of Terrell, Charles Ashworth, of Kaufman, and Jas. V. Allred, T. S. Christopher, and J. A. Stanford, Jr., all of Austin, for appellees.

BARCUS, J.

In March, 1929, Eproson & Co. made a contract with the state of Texas to construct a portion of a public road in Kaufman county according to plans and specifications thereto attached, for an agreed price of $50,243.73. Appellant, as surety, signed the contractor's bond for said amount guaranteeing the faithful performance of said contract. After a portion of the work had been done, new plans and specifications for building the road were substituted. The new plans called for a one hundred foot road instead of eighty and lowered certain grades and made many and numerous changes in minor details. The new plans increased the contract cost to $52,287.-83. On the 25th of October, Eproson & Co. abandoned the contract and notified the state highway department and the surety thereof. The state of Texas notified the surety company of the abandonment of the contract, and the surety company promptly refused to take over the contract and complete same. Immediately thereafter the surety company entered into negotiations with T. F. Larkin & Co. relative to said company completing the Eproson & Co. contract. Larkin & Co. agreed to make a contract with the state of Texas to complete the Eproson contract for the amount of the original contract, plus 50 per cent. on the unfinished work. Appellant agreed to pay Larkin & Co. the extra 50 per cent., and agreed to execute a bond for Larkin & Co. payable to the state of Texas guaranteeing his completing said contract. The state of Texas refused to enter into said contract, but immediately after it rejected same it made a contract with Larkin & Co. to complete said work on a force bid or unit plan. At the time Eproson & Co. abandoned the contract they had completed approximately 56 per cent. of the work and had drawn approximately 39 per cent. of the contract price. The state had in its possession about 61 per cent. of the contract price with which to complete the 44 per cent. of the unfinished contract. The appellant, as surety for Eproson & Co., protested against the state's refusal to make the contract with Larkin & Co. to finish the work for the contract price agreed with Eproson, plus the 50 per cent., and protested against its making the contract with Larkin that it did make. If the state had made the contract with Larkin & Co. on the basis requested by the appellant, and which was acceptable to Larkin & Co., the appellant would have lost at most only a few thousand dollars, the exact amount not being shown. Under the contract as made by the state, it cost $26,422.07 to complete the contract over and above the original contract price of Eproson & Co., for which the state has recovered judgment against appellant in this suit.

After Eproson & Co. abandoned the contract, this suit was instituted by Pippins & Clarkson on their claim for material furnished Eproson & Co. on said contract. A large number of laborers or furnishers of material filed pleas of intervention. After the contract had been completed, the state of Texas filed its plea of intervention and cause of action alleging the execution of the original contract and bond and the abandonment by Eproson & Co. thereof, and that it had made a contract with Larkin & Co. to com-

plete the work, and that the work had cost $78,659.95 instead of the original contract price, and prayed for judgment against the surety company for the extra cost, plus some additional items.

The cause was tried to the court. The trial court entered judgment in favor of a number of laborers or furnishers of material for various amounts against Eproson & Co., but refused to render judgment in their favor against appellant as surety on said bond. None of these parties have appealed, and said portion of the judgment is therefore not disturbed. The court rendered judgment against Eproson & Co. and appellant as its surety in favor of the state of Texas for $26,422.07, and in favor of H. H. Durham for $532.70; J. F. Harrell, $82; T. T. Harris, $935.19; H. L. Haynes, $3,222.76; J. R. LaGow, $98.10; J. S. Laird, $60; Matthews & Austin, $2,237.57; Huey Moore, $27.85; A. B. Murdock, $1,840.81; James O'Connor, $2,583.12; Perkins Dry Goods Company, $21.-84; Pippins & Clarkson, $787.90; Riter's Garage, $31.27; and Sheffield Steel Corporation, $455.38, for labor or material performed or furnished by the respective parties, or by laborers who had assigned their labor claims to one or more of said interveners.

Sherman Magnolia Seed Company filed its plea of intervention seeking judgment against appellant for $3,385.59 for material which it furnished Eproson & Co., and for which amount it had obtained judgment against Eproson & Co. The trial court refused to give the Sherman Magnolia Seed Company any judgment against appellant, and said intervener has, from said adverse judgment, perfected its appeal.

Appellant, the Detroit Fidelity & Surety Company, has perfected its appeal from all of the judgments rendered against it. The record is very voluminous. The trial court did not file any findings of fact or conclusions of law. The statement of facts consists of more than three hundred pages. There are twelve separate briefs. As we view the record, however, it is not necessary for us to dispose of each party separately.

The record shows that none of the interveners who performed labor or furnished material filed their claim with the county clerk, as provided by article 5160 of the Revised Statutes (as amended by Acts 1929, c. 226, § 1 [Vernon's Ann. Civ. St. art. 5160]), except the Sheffield Steel Corporation. It further appears that each of the interveners, in whose favor the trial court entered judgment, did file their claims with the highway department in conformity with article 5472a, Vernon's Ann. Civ. St. The record further shows that, in order to release the $455.38 claimed by Sheffield Steel Corporation and $1,202.32 claimed by Matthews and Austin, Eproson & Co. executed two separate bonds, one in double the amount claimed by Mat-

thews & Austin and one in double the amount claimed by the Sheffield Steel Corporation in conformity with article 5472b—1, as added by the Legislature in 1929 (2d Called Sess., c. 78), and appellant signed said bonds as surety. Intervener Sheffield Steel Corporation claimed its right to recover both by reason of its having filed its claim with the county clerk under the provisions of article 5160 and on the replevy bond filed by Eproson & Co. under article 5472b—1, Vernon's Ann. Civ. St., its suit having been filed within six months after said replevy bond was executed. Matthews & Austin did not file their suit on the replevy bond until more than twelve months after same had been executed and the money released.

■ The Sheffield Steel Corporation having furnished material to Eproson & Co. on the contract in question, and having promptly filed their claim with the county clerk of Kaufman county, where said contract was being performed within the time required by article 5160, and then having filed its claim with the state of Texas under the provisions of article 5472a, and the money thereby impounded having been replevied by Eproson & Co. with appellant as its surety, as provided by article 5472b—1, was entitled to its judgment for the amount of its claim, and the judgment of the trial court in so far as it affects the claim of said appellee is in all things affirmed.

The Legislature has attempted to protect, in so far as possible, the laborers and furnishers of material on all state contract work. By article 5160, as amended in 1929, it provided specifically that every laborer or furnisher of material could absolutely fix its claim against the surety on the contractor's bond by, within ninety days, filing their claim with the county clerk of the county in which the work was being performed. In addition thereto, the Legislature enacted in 1925 articles 5472a and 5472b, Vernon's Ann. Civ. St., under which laborers or furnishers of material could fix a lien on all money, bonds, or warrants due the contractor by filing their respective claims before said money was paid. Our courts have uniformly held that, unless the laborer or furnisher of material files his claim with the county clerk, as provided by article 5160, they could not hold the surety on the bond personally liable. Fidelity & Deposit Co. of Maryland v. Prassel Sash & Door Co. (Tex. Civ. App.) 24 S.W.(2d) 539 (writ ref.); American Surety Co. v. Alamo Iron Works (Tex. Com. App.) 36 S.W.(2d) 714; American Surety Co. v. Axtell Co. (Tex. Com. App.) 36 S.W.(2d) 715; Aetna Casualty & Surety Co. v. Woodward (Tex. Com. App.) 41 S.W.(2d) 674.

■ Under the provisions of articles 5472a and 5472b, the laborers or furnishers of material are not entitled to a personal judgment against the surety on the original

bond of the contractor. They are, however, entitled to judgment against the surety on the replevy bond of the contractor where it replevies the fund under the provisions of article 5472b—1, provided he files suit on said bond within six months after it has been approved and filed.

■ The laborers or furnishers of material, who are appellees herein, except the Sheffield Steel Corporation, all contend that the judgment in their favor should be affirmed because the agent of the surety company, prior to the time they performed the labor or furnished the material, told them that the surety company would pay therefor. The record shows that about the 1st of September, before Eproson & Co. abandoned the contract the 25th of October, there had been some delay in paying the workmen or furnishers of material, and some doubt had arisen whether Eproson & Co. would complete the contract, and some claims had been filed with the highway department at Austin. At that time some 40 per cent. of the contract had been performed by Eproson & Co. The evidence tends to show that some time thereafter, the exact date not being fixed with any certainty, an alleged agent for the surety company told some of the laborers working for Eproson & Co. and some of the furnishers of material and supplies that, if they would continue to work on said job and furnish supplies and material, appellant, the surety company, would pay, not only for the labor thereafter performed and the material and supplies thereafter furnished, but would also pay all unpaid bills for both labor performed and material and supplies furnished. There is evidence tending to show that, after the alleged agent of the surety company made such promises and agreements, it did pay for some of the labor performed and for some of the supplies and material furnished. The various accounts sued upon show that they are for supplies and material furnished at various times beginning with August until November, and the labor accounts are for labor furnished during either October or November or some unnamed date. It cannot be determined from the record when the alleged agent of appellant made the alleged contract; neither is it at all certain that the appellees who performed labor or furnished supplies and material heard of or relied upon said contract prior thereto. If, as a matter of fact, an authorized agent of appellant made a positive contract with appellees or either of them that it would pay for labor thereafter performed or for material and supplies thereafter furnished, it would be liable to said appellees therefor as an original undertaking. Appellant was surety on the bond of Eproson & Co., guaranteeing the faithful performance of its contract, and it was therefore interested in seeing that said company completed

same and paid all claims in conformity therewith.

■ Appellant having pleaded the statute of frauds as a bar against appellees' recovery for any claims they had individually against Eproson & Co., and there being no contention that appellant had in writing agreed to pay same, it would not be liable for any claims appellees or either of them had for labor performed or supplies furnished Eproson & Co. prior to the time appellees made their contract with appellant. Appellant, however, is liable to appellees for the value of all labor performed and all supplies and material furnished by them after it agreed and contracted with appellees to pay therefor. Housley v. Strawn Merchandise Co. (Tex. Com. App.) 291 S. W. 864. Since it does not appear that this feature of the case has been fully developed, the judgment rendered by the trial court in favor of H. H. Durham, J. F. Harrell, T. T. Harris, H. L. Haynes, J. R. LaGow, J. S. Laird, Matthews & Austin, Huey Moore, A. B. Murdock, James O'Connor, Perkins Dry Goods Company, Pippins & Clarkson, and Riter's Garage is reversed and remanded to the trial court.

■ Appellant contends that the judgment rendered against it in favor of the state of Texas is erroneous and should be reversed, because the state refused to make the contract with Larkin & Co. for the completion of the Eproson & Co. contract on the basis of the original contract, plus 50 per cent., its contention being that the state was required upon the abandonment of the contract by Eproson & Co. to minimize the damage as much as possible and to make a contract for its completion in the most advantageous way possible. We sustain this contention. The contract made between the State and Eproson & Co. provides that, if Eproson & Co. abandoned the contract, the state was authorized to take charge thereof and complete the work and appropriate or use any or all materials and equipment on the ground and make a new contract for the completion of the contract in an acceptable manner to the state, and that all costs and charges, together with the cost of completing the work, should be deducted from any money due or which might become due the contractor, and, if the expense is less than the contract, to pay the excess to the contractor, and, if the expense is more, the appellant, as surety, was required to pay the excess. In order to minimize its loss, appellant got Larkin & Co. to agree to complete the Eproson & Co. contract for the amount of the original cost, plus 50 per cent on the uncompleted part thereof. There remained unfinished at said time about 44 per cent. The state had only paid $20,531.80 out of the $52,287.83 it was obligated to pay for the completed contract, and, if the

890

state had made the contract with Larkin, the bonding company would not have been liable for more than a few thousand dollars. Instead of making said contract with Larkin & Co., the state, without giving any reason therefor, refused to execute said contract, but immediately thereafter entered into a contract with Larkin & Co. under the terms of which they paid Larkin & Co. $26,422.07 more than the original contract price.

The general rule of law seems to be well established that in contracts of this nature, where the original contractor abandons the contract, the owner of the property is required to minimize the damage occasioned by the abandonment of the contract and use reasonable diligence to protect the sureties on the bond. Hillyard v. Crabtree, 11 Tex. 263, 62 Am. Dec. 475; Massachusetts Bonding & Ins. Co. v. Davis (Tex. Civ. App.) 274 S. W. 230 (error dis.); City of San Antonio v. Marshall & Co. (Tex. Civ. App.) 85 S. W. 315 (error ref.); Mills v. Paul (Tex. Civ. App.) 30 S. W. 558; Houston & T. C. Ry. Co. v. Mitchell, 38 Tex. 85. We think the true rule in this class of cases is and should be that, where the contractor abandons the contract, and the surety on the contractor's bond tenders an acceptable contractor who is willing to complete the contract per the original plans and specifications, and requests and urges the state to make said contract and agrees as surety to be bound thereby, and indemnify the state for any loss for failure on the part of the new contractor to complete the contract, and the state refuses to make said contract, but instead makes with the same contractor a more onerous contract, the surety is relieved from all liability over and above that which he would have incurred if the state had made the contract tendered. Fair dealing on the part of the state required it to use all reasonable diligence to protect the surety on the contractor's bond.

Appellant further contends that the cause should be reversed and dismissed on the theory that it was prematurely brought by Pippins & Clarkson. We overrule this contention. As to whether Pippins & Clarkson could have maintained the suit at the time it was originally brought becomes immaterial, and we do not decide. Before the case was tried the contract had been completed, and the state of Texas intervened and filed suit on the bond and all laborers or furnishers of material who had unpaid claims filed thereafter amended pleas setting up their respective claims. Appellant only raised the question of the cause being prematurely brought by a general demurrer. No plea in abatement was filed.

Appellant further contends that appellees were not entitled to recover because,

after it signed the bond, the plans and specifications which were attached thereto and made a part thereof were entirely changed and new plans and specifications were agreed upon between the contractor and the state. Since we hold that the laborers and materialmen, except the Sheffield Steel Corporation, are not entitled to a personal judgment against appellant for any labor performed or material and supplies furnished unless appellant personally agreed, prior to the time said labor was performed and the supplies and material furnished, to pay therefor, and since any alleged change in the plans and specifications would not affect appellant's liability to appellees under said specific contract to pay, it is not necessary for us to, and we do not, determine this question as between said parties. The Sheffield Steel Corporation furnished its material and filed its claim with the county clerk of Kaufman county prior to the time the original plans and specifications were changed, and therefore any changes that were made would not affect its claim. So far as the state of Texas is concerned, if as a matter of fact entirely new plans and specifications were agreed upon between Eproson & Co. and the state which materially changed and affected the original plans, and specifications attached to and made a part of the bond and which amounted to a new and separate contract, the state of Texas could not hold appellant as surety on said bond. There is some evidence tending to show that the substituted plans and specifications were not materially different from those originally drawn. The original contract which was made a part of the bond provides specifically that the engineer could make such alterations in the plans and specifications as were deemed necessary or desirable, provided such alterations did not change materially the original plans and specifications or alter the length of the improvements, the quantity of the work or materials to be done, or furnish more than 20 per cent. of the total. The new plans and specifications are not copied in the record. Whether the changes went beyond the changes the engineer was authorized to make is a matter to be determined on the facts, and can be more fully developed upon another trial.

That part of the judgment of the trial court awarding Sheffield Steel Corporation a recovery and denying Sherman Magnolia Seed Company any recovery is affirmed. That portion of the judgment of the trial court awarding a recovery to various parties against Eproson & Co., from which there was no appeal, is not disturbed or in any way affected. That portion of the judgment of the trial court awarding all other parties a recovery against appellant is reversed and remanded to the trial court for further proceedings.