### SOUTHERN SURETY CO. v. WEAVER BROS. et al.

### No. 1380—5972.

Commission of Appeals of Texas, Section B. Feb. 1, 1933.

J. T. Suggs, Jr., and Rice, Hyman & Suggs, all of Dallas, and Anderson & Lewis, of Center, for plaintiff in error.

Sanders & McLeroy, Davis & Davis, and E. H. Carter, all of Center, and Chas. L. Brachfield and John R. Arnold, both of Henderson, for defendants in error.

RYAN, J.

Weaver Brothers, building material dealers, instituted this suit in the district court of Shelby county against the Methodist Episcopal Church South, of Center, Tex., N. O. Thomas & Sons, contractors, and Southern Surety Company, surety on the contractors' construction bond; judgment was sought against the several defendants for the price of certain material sold by Weaver Brothers to the contractors and used by them in constructing a building for the church. The surety company was sued on the theory that being the surety on the contractors' bond to secure the faithful performance of the building contract, and having taken over the work after default by the contractors, it was liable for the unpaid material bills. A lien was also claimed against the church.

Trial was before a jury on special issues, and on its verdict judgment was rendered in favor of Weaver Brothers against the surety company and N. O. Thomas & Sons for the sum of $4,091.57, with recovery over against Thomas & Sons in favor of the surety company. Any recovery against the church was denied, and its property was released from the claimed lien.

The surety company and Weaver Brothers appealed from said judgment which was affirmed by the Court of Civil Appeals, 35 S.W. (2d) 255, and the case is now before the Supreme Court on application for writ of error granted the surety company "because of alleged conflicts" with decisions of other Courts of Civil Appeals and of the Supreme Court on questions of law necessary to the decisions of the cause.

In addition to a general denial, the surety company specially pleaded in defense: (1) The bond on which it was sued was one of indemnity to the church only, and could not afford plaintiff (Weaver Brothers) a cause of action; (2) the contractors had defaulted in the building contract, and thereafter the owner church had expended not only all of the remainder of the contract price, but also $1,226 supplied by the surety company for the necessary expense of completing the building; (3) the surety company received no part of the contract price from the church, nor any funds whatever, but to the contrary the church had secured from it and used $1,226 as above stated; and (4) that the final acceptance of the building by the church, subject to payment by the surety company of any and all amounts due for material furnished and labor performed which were then unpaid, and its continued liability as surety on the contractors' bond, therefor, was not a contract, was without consideration, and in no manner imposed obligations beyond its bond, on the surety.

The contract entered into between the owner church and contractors provides: "The owner shall have the right, prior to the signing of the contract, to require the contractors to furnish bond covering the faithful performance of the contract and the payment of all obligations arising thereunder, in such form as the owner may prescribe and with such sureties as he may approve."

Bond was executed by the contractors with the Southern Surety Company as surety, to the church, in the sum of $20,000, conditioned that whereas the contractors entered into contract with the church (by reference thereto, which was made a part of the bond) to erect a new church building in the City of Center, for the sum of $30,000, therefore, if the contractors shall complete said contract according to the plans and specifications for same, and shall indemnify the church against all loss or expense resulting from the contractors' failure to pay all labor and material bills in connection with said contract, said bond shall become null and void, otherwise to remain in full force and effect.

It was further provided in the bond that no liability shall attach to the surety thereunder, unless in the event of any default on the contractors' part to perform any of the terms, covenants, or conditions of the contract, the church shall promptly, upon knowledge thereof, and not later than ninety-five

636

days after such knowledge, notify the surety by written notice with a statement of the principal facts showing such defaults and the dates thereof.

In due time, the church, in writing, advised the surety of certain work not completed according to the contract, and certain unpaid debts due by the contractors, among which was the claim of Weaver Brothers to the amount of $4,091.57. This notice, dated October 4, 1927, also stated: "The contractors are still at work on the church and advise that they are going to complete the church according to plans and specifications, and this notice to you is intended only to give you the notice that is required by the terms of your bond and you can be governed accordingly."

The notice signed by Weaver Brothers, addressed to the chairman of the church's building committee, dated September 23, 1927, advised the nonpayment of a balance of $4,-091.57, resulting from purchases of material by the contractors and used in the building amounting to $15,514.66, less credits amounting to $11,423.09, and stated: "We are herewith filing this claim against the building fund and shall hold this claim against the building until said unpaid balance is paid." Statements showing invoice date and amount of each invoice were attached thereto.

The jury found that the surety had notice on September 19, 1927, of Weaver Brothers' claim, that on September 23, 1927, the church acquired such notice, and on September 27, 1927, the church had on hand the sum of $4,220.98, unexpended, of the contract price.

The jury further found that the church knew that Weaver Brothers had filed a notice or lien for an unpaid part of their bill, and at the time their first account was filed with the county clerk, the church held the above-unexpended amount of the contract price; also that the church received notice in writing at the time of each purchase from Weaver Brothers of each item of material that went into the erection of the church building.

By written communication, dated October 21, 1927, the surety advised the church as follows: "This letter evidences release for such balance of retained percentage on the Church Contract above referred to, as is necessary for completion of the building, payment of such amounts to be made for payrolls and other necessary expenses for completion on order and signature of Mr. Butler Johnson, our agent in Center, Texas, whose signature appears at the bottom of this letter. Yours very truly, Southern Surety Company, By Ben T. Harrison, Attorney-in-fact. Countersigned. Butler Johnson."

In consideration of the execution of said bond by the surety, the contractors and surety agreed that, in the event of the contractors' failure to carry out said contract with the church, the surety may at any time thereafter take such steps as it may deem neces-

sary or proper to obtain due performance thereof or its release from liability thereunder. For the better protection of the surety, the contractors assigned to it all tools, plant, equipment, and materials, then or thereafter in or upon the work, including all materials purchased for or chargeable to the contract, which may be in process of construction, in storage elsewhere, or in transportation to the site; also all payments, funds, moneys, or property due or to become due as provided in the contract, and all rights in and to all subcontracts, then or thereafter entered into, and the materials embraced therein. It was further agreed that in the event the contractors shall fail or be unable to complete said contract, the president or vice president of the surety company was appointed the contractors' true and lawful attorney with full right and authority to sign the contractors' name to any voucher, check, release, bill of sale, satisfaction, or paper necessary or desired to carry into effect the purpose of said assignment; the surety was also authorized to enter upon and take possession of said tools, plant, equipment, materials, and subcontracts, and enforce, use and employ such possession.

The jury found that the surety company took over and completed the building; that it was taken over on October 21, 1927; that the surety company directed or requested the church to pay out the money on hand in the church's building fund, after said surety company had received notice of the unpaid bills owing to Weaver Brothers; and that the 10 per cent. authorized to be retained by the original contract between the church and the contractors was expended after the surety company had notice of said unpaid bills due to Weaver Brothers.

Payments, after the contractors abandoned the work, were made upon the approval of Butler Johnson, whom the jury found was the duly authorized agent for the surety company; to complete the work required the expenditure of all the contract price with the additional sum of $1,226 advanced by the surety company.

It is stated by the Court of Civil Appeals: "The surety company assumed the obligations of the contract and completed the building according to the plans and specifications and at its request the church furnished it the following certificate:

"Center, Texas, January 10, 1928.
"Southern Surety Company, Des Moines, Iowa.

"Gentlemen: This is to advise you that subject to the exceptions hereinafter stated, the Methodist Episcopal Church South, of Center, Texas, has been completed to the satisfaction of the building committee, and is accepted by said Committee, subject to said exceptions, which are as follows:

"(1) It is not intended to release you from

payment of any and all amounts due for material furnished and labor performed in the construction and erection of said church which are now unpaid, but that you remain liable as surety on contractors bond for the payment of such amounts.

"(2) It is not intended by this instrument to accept hidden defects, if any there be, in the erection of said church."

—which was accepted by the surety, without objection.

### Opinion.

The church's contract required of it the payment of a stipulated sum, $30,000, for the erection of a church building. The church made such payment in installments on architect's estimates, as provided in the contract, first to the contractors, and, when they abandoned the job, then to those performing labor and furnishing material; such latter estimates having the approval of Butler Johnson, the surety's representative; therefore the church discharged its obligation.

When the contractors abandoned the work, the church had on hand as retainage under the contract, a larger amount of money than required to pay Weaver Brothers' claim. This retainage was provided for by the contract and of course was for the protection of the surety as well as laborers and materialmen, and was applicable as well to the claim of Weaver Brothers as to the claims, if any, of others similarly situated.

By direction of the surety, the church was released of such retainage, and the amount thereof used in payment of other claims necessary for the completion of the building, on the order of Butler Johnson, the surety's agent at Center, Tex.

If this retainage had been applied to the payment of claims owing by the contractors at the time of their abandonment of the work, necessarily the amount needed by the surety for the future completion would have been proportionately increased; the use of such retainage to pay for future completion, instead of to all claims against the contract, was therefore to the surety's advantage.

The bond is payable to the church, and the church could enforce it to the extent of claims for labor and material, because it secures the owner to that extent, against such claims. It is contended that the bond was not intended for the benefit of a party not privy thereto and not entered into with such third party's benefit as its object, and therefore not recoverable on by Weaver Brothers, who were not parties thereto and not secured thereby; in other words, that only the church can recover thereon.

In Gen. Bonding & Casualty Ins. Co. v. Waples Lumber Company (Tex. Civ. App.) 176 S. W. 651 (writ of error refused), the bond was similar to that in the instant case; recovery thereon by a materialman was denied because liability was to the owner only, and not to the benefit of materialmen where the bond itself or the contract requiring its execution did not provide that the bond should be payable to the materialmen, or that it should inure to their benefit.

To the same effect is the holding in National Bank of Cleburne v. G., C. & S. F. Ry. Co., 95 Tex. 176, 66 S. W. 203, and in Santleben v. Alamo Cement Co. (Tex. Civ. App.) 25 S. W. 143.

The Legislature (Gen. Laws, 24th Leg. 1915, c. 143) enacted a statute requiring the owner to take a bond from the contractor, the effect of which was to permit suit to be brought by materialmen (among others) on such bond and recover thereon in the same manner as if the bond were made payable directly to them; but this was held to be unconstitutional as an unwarranted interference with the liberty to contract. Southern Surety Co. v. Nalle & Co. (Tex. Com. App.) 242 S. W. 197; Williams v. Baldwin (Tex. Com. App.) 228 S. W. 554; Wright v. A. G. McAdams Lumber Co. (Tex. Com. App.) 234 S. W. 878.

Therefore, if the owner suffered no loss or damage because of the contractors' failure to comply with the terms of the contract, no liability existed under the bond against the surety in favor of the owner. Putegnat Co. v. Fidelity & Deposit Co. (Tex. Com. App.) 29 S.W.(2d) 1004.

■ It is true that no person can sue upon a contract unless he be a party to or in privity with it, but provisions in a contractors' bond such as "the obligation of this bond shall inure to the benefit of material men and sub-contractors," give them a right of action on the bond not dependent upon the existence of a materialman's or laborer's lien. U. S. Fid. & G. Co. v. Thomas (Tex. Civ. App.) 156 S. W. 573; American Emp. Ins. Co. v. Roddy (Tex. Com. App.) 51 S.W.(2d) 280; Austin Bros. Bridge Co. v. Love (Tex. Com. App.) 34 S.W.(2d) 574; 7 Tex. Jur. p. 98.

■ But, as correctly stated by the Court of Civil Appeals, the record showing that upon the contractors' default the surety took over and completed the building and supervised the payment of the funds agreed to be paid by the church, the surety became entitled to all the benefits of the contract and assumed all its responsibilities.

■ It is argued that because the contract provides (article 33) "neither party to the contract shall assign the contract or sublet it as whole without the written consent of the other, nor shall the contractor assign any moneys due or to become due to him hereunder, without the previous written consent of the owner," and because no such written consent of the church to the assignment by the contractor to the surety was shown, the latter does not, by acting with the owner in effecting completion of the building, become liable un-

der the building contract by virtue of being the contractors' assignee.

It may be true that the surety did not reserve in its bond any right to complete the building on the contractors' default, but the contract between the surety and contractors did so provide, when the surety reserved the right therein to take such steps as it (the surety) may deem necessary or proper to obtain due performance of the contract and release from liability thereunder, and took an assignment of tools and equipment, payments, funds, moneys, and property due, or to become due, under the contract, as well as all rights in and to subcontracts and materials embraced therein, and it was under such contract that the surety acted in the completion of the building, appointed its own foreman, and directed payment by the church of all funds in connection therewith; this was done with the approval of the church, as is evidenced by the church's payments under and only with the approval of the surety's representative, which we think satisfies the objection. Then, finally upon request by the surety of proper clearance from the church, the church accepted the building from the surety, subject to certain conditions as hereinabove stated.

We are cited by plaintiff in error to Employers' Casualty Company v. Rockwall County, 120 Tex. 441, 35 S.W.(2d) 690,* and Gollnick v. Fry, 119 Tex. 23, 23 S.W.(2d) 677, 681, as sustaining its contentions herein. In the first-cited case the contract was between the surety who completed the contract and claimed a retainage fund in the county's hands, under an assignment of all the deferred payments and retained percentages and all moneys due and payable to the contractor at the time of his default in the contract or cessation of work thereunder or that may thereafter at any time become due and payable to the contractor on account of the contract, on the one hand, and a bank, claiming the entire fund under an assignment from the contractor made subsequent to the assignment to the surety, on the other hand. The bank claimed priority in right to the retainage fund, first, because it loaned the contractor money, which was used to pay laborers and materialmen, and therefore subrogated to their rights—but the court held that there was no assignment or agreement therefor by the laborers and materialmen to that effect, and therefore no subrogation; second, because the surety's claim could accrue only after and conditioned upon the contractors' default, which was subsequent in time to the accrual of the bank's claim. The court held that the surety's claim to the retained fund, under its assignment, was superior to that of the bank; the surety's right being by reason of the anterior assignment to it, as well as by subrogation, which is in line with the holding in Prairie State Nat'l Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412, that

*35 S.W.(2d) 1098.

the right of subrogation for a surety relates back to the making of the original contract.

In Gollnick v. Fry, supra, the contractor reserved the right to, and did in fact, perform the contract; the lumber company merely furnished material and advanced money to the contractor by paying his orders therefor, in carrying out the contract by the contractor.

Clearly said cases are distinguishable from, and not authority here. The rule followed by us in this case is fully recognized in Gollnick v. Fry, as follows: "If it had been attempted, with the consent of the owner, for a valuable consideration, to substitute the lumber company for the contractor, such company would thereby have assumed and obligated itself to fully perform the contract according to its terms. C. J. vol. 5, p. 977."

It is also argued that if the holding of the Court of Civil Appeals is allowed to stand, no longer can any surety afford to discharge its obligation by completing a defaulted contract, on the premise that the liability of a surety who refuses to perform a defaulted building contract can in no event exceed the amount reasonably expended by the owner in effecting completion, less the amount of the contract price in the owner's hands at the time of the default; thus penalizing a willingly performing surety. Liability in the present case is of course dependent upon the contract between the parties and the bond securing the performance thereof.

If the surety had refused to complete the contract and the owner church had done so, it (the church) would have become liable for material and labor used in doing so, and unquestionably could have enforced same against the surety. Fidelity & Dep. Co. v. Kelsay L. Co. (Tex. Com. App.) 29 S.W.(2d) 1052, 1059. Such liability would not have been less; the material in question went into the building (H. & S. Eng. Co. v. Turney, 110 Tex. 148, 154, 216 S. W. 621), and of course had to be paid for by some one. If the surety had refused to perform and the owner had then taken over the completion, the latter's liability for the material used existed. Security to the church against such a claim is provided for by the bond itself. So there is no merit or force in that argument.

But the surety having taken over the contract and completion of the building, we think this case is ruled by the principles announced in Putegnat Co. v. Fidelity & Deposit Co. (Tex. Com. App.) 29 S.W.(2d) 1004, 1007, as correctly held by the Court of Civil Appeals, 35 S.W.(2d) 255.

In that case, as here, the contractor agreed to construct a certain building in accordance with certain plans and specifications, and to furnish all necessary labor and material therefor, and also a bond with approved security. In both cases, the contract required completion of the work; in that case the

bond provided "that if the principal shall abandon said contract * * * the surety shall have the right, at its option, to complete said contract or to sub-let completion thereof"; there is no such provision in the bond here, but that right was reserved in the contract between the surety and the contractor, was acted on by the surety, and the building completed by the surety because of that right, with the approval of the church, as evidenced by the church thereafter paying out its building fund under the surety's direction and supervision.

In both cases, the contractor, before the building was completed, abandoned the enterprise, and the surety completed the building.

As there said by Presiding Judge Short of this section of the Commission of Appeals: "When the owner notified the defendant in error [surety] that the contractor had made default, the record shows that it elected to complete the contract, thereby becoming entitled to all the benefits of the contract and assuming all its responsibilities. When the defendant in error reserved the right to make this election, and after he had exercised it, under the very conditions which it had previously prescribed, there was an assignment to it by virtue of the existence of the conditions set forth in the contract which had been made between the owner and the contractor. The contract having thus been assigned by the existence of the conditions and the election on the part of the defendant in error to complete the contract, the defendant in error became entitled to the benefits of the contract, and necessarily assumed its burdens. The owner discharged his obligations under the contract. The contractor failed to discharge his, whereupon the defendant in error exercised its right to complete the contract and to stand on the terms of the bond, which, as we have seen, was so written as to embrace within its terms the contract made between the owner and the contractor. The facts in this case show the elements of an assignment by the contractor to the defendant in error of the contract, with the consent of the owner of the building, whereby the defendant in error, upon its election to complete the contract, became entitled to all of its benefits and assumed all of its responsibilities."

The facts in the two cases are essentially the same.

Here, also, it is shown that the church accepted the building, after its completion by the surety, with the express reservation of the nonintention to release the surety from payment of unpaid amounts due for material furnished and labor performed in the construction and erection of the church, and the express requirement that the surety remain liable for the payment of such amounts. This conditional release was not objected to by the surety, and to our minds evidences the acceptance thereof, and an intention of the parties that such unpaid claims for material and labor must be settled by the surety.

The surety took over completion of the building after it had notice of Weaver Brothers' claim, and thereafter accepted the release from the church with the requirement that it would be responsible for all unpaid materials.

As further said in Putegnat v. Fidelity & Deposit Co., supra: "The testimony shows, without dispute, that at the time the defendant in error elected to exercise this right, to complete the contract, after the contractor had abandoned the contract, it had information that the contractor had, in pursuance of his obligation with the owner, procured from the plaintiffs in error the material necessary to construct the building, but that the contractor had not paid for this material. The testimony further shows, without dispute, that this material was actually used by the contractor in the furtherance of his efforts to perform his part of the contract. * * * This contract, the right to complete which the defendant in error exercised, has mutual and dependent stipulations. It is stipulated that the contractor should construct, at his own expense, a certain dwelling in a certain location. Another stipulation is that the owner of the dwelling should pay therefor a certain sum of money when completed, according to certain plans and specifications. Each of these stipulations is dependent, the one upon the other. By the express terms of the contract, it is apparent that the parties thereto contemplated that, as and when the contractor performed the acts he agreed to perform, the owner of the dwelling in process of erection should likewise do the things he agreed to do. The contract being a mutual and dependent one, when the defendant in error demanded and received from the owner what the contractor would have been entitled to demand and receive from him had the latter completed the contract, as the defendant in error had done, the law implied upon the part of the defendant either an assertion that all things had been done which the contract required to be done or a promise that it would do everything which the contract had required to be done in order that it should be completed. Where one accepts the benefits of a contract, he must assume its burdens."

We have reached the conclusion that the surety assumed the defaulted contract, was entitled to and received the benefits thereof, and became subject to the liabilities thereof, one of which was the payment of Weaver Brothers' claim, and therefore recommend that the judgments of the district court and Court of Civil Appeals be affirmed.

CURETON, C. J.

The judgments of the district court and of the Court of Civil Appeals are affirmed, as recommended by the Commission of Appeals.