**CAPITOL STEEL & IRON COMPANY,**
Appellant,

v.

**STANDARD ACCIDENT INSURANCE
COMPANY, Appellee.**

No. 6207.

Court of Civil Appeals of Texas.

Amarillo.

April 21, 1952.

Rehearing Denied May 26, 1952.

McWhorter, Howard & Cobb, Lubbock, for appellant.

Crenshaw, Dupree & Milam, Lubbock, for appellee.

LUMPKIN, Justice.

On this appeal the appellant is the Capitol Steel & Iron Company, and the appellee is the Standard Accident Insurance Company. The suit was originated by the Levelland Independent School District filing a bill of interpleader in the District Court of Hockley County, Texas. The bill alleged that on July 30, 1948, the School District had entered into a contract with D. D. Humphries for the construction of a school building. Among other conditions, the contract provided that Humphries should make a bond guaranteeing the full performance of the contract. The bill alleged that Humphries, as contractor and principal, and the appellee, Standard Accident Insurance Company of Detroit, Michigan, as surety, did make and execute and deliver to the School District a statutory performance bond in the sum of $440,917, conditioned that Humphries would fully perform the contract. The School District pleaded that Humphries incurred obligations amounting to approximately $119,000 to various individuals, firms and corporations for materials and supplies for which he could not entirely pay. Under the contract the School District was allowed to retain 10% of the amounts owed the contractor on the architect's estimates. The School District alleged that it had retained $43,154.71, and that after it had received notice from various creditors that Humphries was not paying their bills, it retained the sum of $19,451.21 and offered into court the aggregate of these two sums—$62,605.95. In the interpleader petition all of Humphries' creditors who had furnished labor and material—including the appellant, Capitol Steel & Iron Company, and the appellee, Standard Accident Company—were made parties and called upon to set up their respective claims against this fund.

On August 19, 1950, the court ordered the cause as to issues between the Levelland Independent School District and the creditors to be severed from the issues as made by the creditors in their cross-action against the contractor, D. D. Humphries, and the appellee, Standard Accident Insurance Company. The fund held by the School District was distributed pro rata to all the creditors. The claims of certain of the creditors were dismissed, while others filed no claim or cross-action or aban-

doned their respective claims against Humphries and the appellee.

On February 1, 1951, the appellant, Capitol Steel & Iron Company, filed its second amended petition alleging that it had received only $7,049.73 out of the School District funds and that a balance of $6,537.27 was due from Humphries and the appellee. The appellant pleaded that it had entered into a contract with Humphries to furnish the steel products for the sum of $78,000. In addition to asking for a recovery against Humphries, the appellant sought recovery against the appellee alleging that the appellee's bond with the School District guaranteed the payment of all claims arising in favor of the materialmen, such as the appellant. In the alternative, the appellant alleged that the bond was a common law obligation; that, in the second alternative, if it were not a common law obligation, then the appellant had performed all that was required and satisfied the provisions of Article 5160, Revised Civil Statutes, and Chapter 2, Title 90, Vernon's Annotated Civil Statutes. In addition the appellant pleaded that certain claims were purchased by the appellee without ascertaining whether they had been filed in accordance with the Mechanic's Lien Statute; that, further, deeds of trust and chattel mortgages were taken by the appellee from Humphries to secure the appellee against a loss; and that appellee by reason of its actions was in law estopped to deny its liability—that it had, in effect, waived absolute compliance with Article 5160 and had ratified and confirmed the appellant's claim. The appellee filed a number of exceptions to the appellant's pleading; all were sustained by the trial court. Thereafter, in a supplemental petition, the appellant again set up its claim for material furnished and further alleged that the contractor had abandoned the job and that the appellee, as surety, had taken over the building contract.

At the beginning of the trial, which was to a jury, Humphries stipulated that certain creditors—to wit, the appellant, Capitol Steel & Iron Company; Engineering Service, Inc.; Hillsdale Gravel Company; E. H. Sheldon & Company; and Frank Wallis Plastering Company—should recover judgment against him in the amounts of their respective claims. The trial thereafter proceeded only upon the claims of these same creditors against the appellee. After the appellant and the other claimants had rested, the appellee moved the court to withdraw the case from the jury or peremptorily to instruct the jury to find in its favor on the ground that the evidence was insufficient to raise an issue of fact as to whether on or about June 8, 1949, Humphries had abandoned his contract with the School District and the appellee had then taken over the job and completed the contract. Moreover, the appellee stated that the question of the validity of the mechanic's lien claims filed by the claimants presented an issue of law and not one of fact. After the claimants agreed that the issue of the amount and validity of the mechanic's liens should be withdrawn from the jury, the trial court sustained the appellee's motion and on August 30, 1951, rendered judgment in favor of the claimants and against Humphries for the respective amounts of their claims, but the court decreed that none of them was entitled to recover anything against the appellee. From this judgment only the appellant, Capitol Steel & Iron Company, has perfected an appeal to this court.

The appellant contends that since there were facts from which the jury could have found that Humphries abandoned his contract and that the construction of the building was taken over by the appellee, the court erred in granting a motion for an instructed verdict. The appellant insists that the proffered evidence shows that the appellee paid for some of the labor and materials and moreover took a deed and chattel mortgage on Humphries' property.

■ "Abandonment" is principally a matter of intention which must be established by clear and satisfactory evidence.

Humble Oil & Refining Co. v. Cook, Tex. Civ.App., 215 S.W.2d 383, 384. The abandonment of a contract is a matter of intent. Lohn v. Fletcher Oil Co., 38 Cal.App.2d 26, 100 P.2d 505, 507; Pearson v. Black, Tex.Civ.App., 120 S.W.2d 1075. In Mood v. Methodist Episcopal Church South, Tex.Civ.App., 289 S.W. 461, 464, it is said: "To constitute abandonment of contract by conduct, the acts relied upon must be positive, unequivocal and inconsistent with the existence of the contract."

It appears that on May 30, 1949, after learning that Humphries was not paying his bills promptly, R. G. Burchell, an employee of the appellee in its bond claim department, came to Levelland and made an investigation which resulted in several recommendations. On June 9, 1949, a joint control agreement was made between Humphries, the appellee and the First National Bank of Lubbock, Texas, by which all future payments by the School District on the contract were to be deposited in the bank and paid out only on bills for labor and material used in the building of the school. Thereafter all checks, with the exception of one issued by the School District, were made payable to Humphries and the appellee, and all checks drawn on the bank account were countersigned by appellee's representative. In discussing the work being done on the building, Burchell said: "This job was closed down at the time that I reached here. In other words, there were a few people working, and it was not closed down entirely, but it was not progressing rapidly toward completion." Later he testified: "At the time I arrived here, there were only a few men working on the job * * *. When I speak of the job, I am referring only to the general contractor. There were other contractors in connection with this job who were operating at the time and so was our contractor, but it was not progressing particularly." After Burchell had made his investigation, the appellee advised the appellant by letter that consideration of any claim which the appellant might have would be facilitated if it would submit a verified statement of the account to the appellee. After the appellant had received assurances that it would be paid, it shipped additional building material. (It is not shown from whom, if anyone, the appellant received these assurances.) The evidence reveals that the appellee took from Humphries a deed of trust and a chattel mortgage covering certain real and personal property to secure it against losses on the bond as well as to secure it in the payment of bond and insurance premiums. The evidence reveals that the appellee paid several of the appellant's creditors, but the evidence does not show that they were paid before the completion of the job but were paid after the building was finished.

In determining whether a trial court's action in granting a motion for a peremptory instruction was proper, the appellate court will view the evidence in the light most favorable to the losing party. It will disregard the conflicts in testimony and it will indulge in favor of the appellant every intendment reasonably deductible from the evidence. White v. White, 141 Tex. 328, 172 S.W.2d 295; Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256. When an appeal is from a judgment on an instructed verdict for the defendant, the controlling question is whether there is any evidence in the record which, when considered by itself, would, if accepted by a jury, have raised an issue of fact which would have supported a judgment in favor of the plaintiff. Continental Ins. Co. of City of New York v. Johnson, Tex.Civ. App., 216 S.W.2d 635, writ refused. However, an appellate court will not reverse a judgment based on an instructed verdict unless the appellant demonstrates that there is sufficient evidence to support fact-finding in accordance with his cause of action. Neyland v. State, Tex.Civ.App., 151 S.W.2d 331.

It is, therefore, readily discernible that the appellant has failed to show any evidence to support fact-findings in accord-

ance with his cause of action. The evidence is wholly insufficient—viewed from the appellant's point of view—to raise the issue that Humphries intended to abandon the contract to build the school or that the appellee assumed the responsibility of building it. The most that can be said for the testimony urged by the appellant is that the appellee, finding that Humphries was in financial straits, hurried to his aid and assisted him in carrying out his contract. The cases cited by the appellant, Southern Surety Co. v. Weaver Bros., Tex.Com.App., 56 S.W.2d 634; Detroit Fidelity & Surety Co. v. Pippins & Clarkson, Tex.Civ.App., 47 S.W.2d 886; and Southern Surety Co. v. Texas Concrete Pipe Co., Tex.Civ.App., 62 S.W.2d 534, do not support its contention. In the first case the issue of default and of abandonment of contract was not before the court; in the second case the contractor abandoned the contract and notified the State Highway Department and his surety; in the third case the issue of abandonment was not raised. The appellant tries to make something of the fact that Humphries executed deeds of trust and chattel mortgages in favor of the appellee. There is no evidence, however, that the appellee made any promises to any person—and certainly not to Humphries—to pay all labor and material claims in consideration of the execution of the deed of trust and chattel mortgage. In our opinion the trial court did not err in withdrawing the issue of abandonment from the jury.

■ Next, the appellant contends the court erred in holding that its materialman's lien affidavit was insufficient in law. This affidavit, dated August 1, 1949, was filed for record on August 3, 1949. An examination of this instrument reveals that the items supplied Humphries from the beginning of the job on September 9, 1948, were listed separately by estimates. The portion of the instrument in controversy reads as follows:

"May 4   grilles, frames   20th
   estimate                          $750.00
"May 4   sash   21st estimate   $1,680.00
"June 6, anchors, doors, angles and vents, 22nd estimate            $2,000.00
"June 24   expansion joints and safety treads, 23rd and final          $8,680.00"

Article 5160, Revised Civil Statutes, provides: "That all claims for labor and material furnished to said contractor, and all claims for labor and material furnished to any contractor shall be itemized and sworn to as required by Statutes as to mechanic's lien claims, and such claims shall be filed with the County Clerk of the County, in which said work is being prosecuted, within ninety days from the date of the delivery of said material and the performance of said work."

In the case of Aetna Casualty & Surety Co. v. Hawn Lumber Co., 128 Tex. 296, 97 S.W.2d 460, 462, the Supreme Court states the reason why mechanic's lien instruments must be itemized:

"The purpose of itemization is to enable all parties dealing with the contractor to determine from time to time as the work progresses 'for what the lien is claimed, whether for work and labor, and if so, the nature of it, when performed, and at what price; or materials, and if so, the kind, quality and price and when furnished or delivered; or both labor and materials, and if so the kind, quality, the price of each and when performed or furnished.'" See also, Ball v. Davis, 118 Tex. 534, 18 S.W.2d 1063.

■ Looking at the items listed above, it will be noticed that nowhere in the instrument is stated the number of grilles or the unit price of each or the total price of the grilles; nor is the number of frames stated or the unit price or the total price of the frames; nor is the number of sashes stated

nor the unit price of each nor the total price. The same is true of the items under dates of June 6th and June 24th. An examination of the purported lien does not reveal the kind, quality or price of the material or quantities. An examination of the lien instrument does not reveal whether the charge was reasonable and just. In our opinion the trial court correctly held the lien insufficiently itemized to comply with the requirements of Article 5160. Trinity Universal Ins. Co. v. Woitaske, Tex.Civ. App., 148 S.W.2d 235, error dismissed; Meyers v. Wood, 95 Tex. 67, 65 S.W. 174; Hardin v. McCarthy, Tex.Civ.App., 55 S. W.2d 1099, error dismissed. Nor do we believe that the trial court erred in holding that the 90-day limitation of Article 5160 for the filing of liens applies separately to each delivery. The appellant contends that where there is a lump sum contract no itemization is required. The same contention was made in the case of Union Indemnity Co. v. Rockwell, Tex.Civ.App., 38 S. W.2d 821. It was argued in that case that where particular articles were delivered under a contract, the time element would begin to run from the date of the final delivery. The Court of Civil Appeals did not pass on that question, but the Supreme Court in 57 S.W.2d 90, 91, said:

"In some jurisdictions the rule is announced that where the work was done or the materials furnished under an entire contract to do or furnish the same for a gross sum, it is not necessary that claimant should itemize his account in his statement. * * * But the foregoing rule does not prevail in this state. Our courts hold that, at least where the claimant is a subcontractor, it is necessary that the claim or statement should contain an itemized account of the work done and materials furnished for the building. * * * In constructing statutes involving analogous principles, our Supreme Court, after an exhaustive review of authorities, has reiterated the foregoing rule."

The following cases enunciate the same rule of law: National Surety Co. v. United Brick & Tile Co., Tex.Civ.App., 71 S.W.2d 937, writ dismissed; Aetna Casualty & Surety Co. v. Hawn Lumber Co., supra; Meyers v. Wood, supra.

■ Third, the appellant insists that the court erred in holding that a symbolic delivery to a carrier was contemplated by Article 5160 instead of an actual physical delivery to the contractor when computing the 90-day period of limitation for filing of a lien. All of the cross-plaintiffs and intervenors, including the appellant, Capitol Steel & Iron Company, agreed in open court that the issues as to the amount and validity of the various mechanic's liens should be withdrawn from the jury. However, since the appellant in his lien instrument set forth the date of furnishing these materials as May 4, which was more than 90 days prior to the filing of the lien instrument, the burden rested on appellant to show that delivery was made after May 4. It is not shown how, when or from where the materials were shipped. We do not believe that the trial court was in error when it held that the evidence was insufficient to show an actual delivery within the 90-day period. Metropolitan Casualty Ins. Co. of New York v. Texas Sand & Gravel Co., Tex.Civ. App., 68 S.W.2d 551.

■ Fourth, the appellant claims that the court erred in refusing to admit against the appellee Humphries' stipulation in which he agreed to the appellant's claim for materials. The appellant maintains that the court erred in excluding testimony which shows that Humphries had assured the appellant of payment for the materials furnished. The appellant contends that since both Humphries and appellee were parties to the same suit, this testimony was admissible. These stipulations were not res gestae of the transactions out of which this suit arose, and any assurances Humphries may have made to appellant were

made without any authority to bind the appellee.

The appellant's eighth and ninth points of error relate to a number of rulings by the court on six different exceptions in its pleadings. The appellant insisted that the bond was a common law obligation and that the appellee was liable under it regardless of whether the appellant complied with the requirements of Article 5160 for the filing of a proper mechanic's lien.

Our courts have held that even though a bond should be construed as a common law obligation, nevertheless in order to recover on it, the claimant must comply with the statutory requirements as to the filing of the lien. Standard Sanitary Mfg. Co. v. Southern Surety Co., Tex.Civ. App., 59 S.W.2d 291, writ refused; Employers' Liability Assurance Corporation v. Young County Lumber Co., Tex.Com.App., 122 Tex. 647, 64 S.W.2d 339; Aetna Casualty & Surety Co. v. Higginbotham-Bartlett Co., Tex.Civ.App., 71 S.W.2d 592; Fidelity & Deposit Co. of Maryland v. Prassel Sash & Door Co., Tex.Civ.App., 24 S.W.2d 539, writ refused; Indemnity Ins. Co. of North America v. South Texas Lumber Co., Tex. Com.App., 29 S.W.2d 1009. The appellant's allegations in which it seeks to estop the appellee from denying that the bond was a common law obligation or seeks to establish that the appellee had ratified it as a common law obligation or seeks to establish that the appellee had waived its right to deny that the bond was a common law obligation are wholly outside any issue in the case. The appellant did not allege that the appellee had promised to pay its account or that it had advised the appellant not to file a lien. In our opinion the trial court properly sustained the exceptions to these portions of the appellant's pleadings.

For the reasons stated, the appellant's points of error are overruled, and the judgment of the trial court is affirmed.