## FIDELITY & DEPOSIT CO. OF MARYLAND v. PRASSEL SASH & DOOR CO. et al. (No. 628.)

Court of Civil Appeals of Texas. Eastland.

Dec. 13, 1929.

Rehearing Denied Feb. 14, 1930.

Albert B. Hall, of Dallas, for appellant.

Hal Browne, of San Antonio, Stinson, Hair, Brooks & Duke, of Abilene, Trippet, Richey & Sheehy, of Waco, and Scarborough, Ely, Brown & King, of Abilene, for appellees.

HICKMAN, C. J. The board of trustees of the McCamey independent school district of Upton county awarded a contract for the erection of a school building to J. R. Horn & Sons. By the terms of the written contract

entered into, the contractors agreed to furnish all labor and material required to complete the building, except plumbing, heating, and electrical work. The plans and specifications made by David S. Castle Company, architect, were made a part of the contract. These specifications provided that: "The contractor shall, at his own expense, provide a bond in an amount equal to 50% of the contract price, with an approved surety company as surety, or two personal sureties to the approval of the owner, for the faithful performance of the contract, and also for the use and benefit of all parties who may become entitled to liens under said contract, according to the provisions of the laws of the State of Texas."

The contract recited that: "The bond hereto attached is given for the purpose of binding said contractor to the faithful performance of this contract."

On the reverse side of the contract was the following bond, executed by the contractors as principal and the appellant as surety: "Know All Men by These Presents:

"That we, J. R. Horn & Sons, principal, and those whose names are signed hereto as sureties, are held and firmly bound unto Board of Trustees of the McCamey Independent School District, McCamey, Upton County, Texas, as well as to all persons who may furnish labor or material on the contract hereinbefore mentioned, in the sum of Fifty Two Thousand Six Hundred Sixty One and 76/100 Dollars, to be paid to the said Board of Trustees of the McCamey Independent School District and to said parties who may furnish labor or material, their executors, administrators or assigns, for which payment, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents.

"The condition of this obligation is such that if the above bounden principal, his executors, administrators or assigns shall, in all things stand to and abide by and well and truly keep and perform the covenants, conditions and agreements in attached contract, for the construction of the work or works mentioned therein, and shall duly and promptly pay and discharge all indebtedness that may be incurred by the said principal in carrying out the said contract, and complete the same, free of all liens and shall truly keep and perform the covenants, conditions and agreement in said contract, on his part to be kept and performed, at the time and in the manner and form therein specified, as well as all costs, including attorney's fees, in enforcing the payment and collection of any and all indebtedness incurred by said principal in carrying out the said contract, then the above obligation shall be void; else to remain in full force and virtue.

"This bond is made (wholly performable at McCamey, Upton County, Texas, and) for the use and benefit of all persons who may furnish labor or material on the hereinbefore mentioned contract.

"Signed this 19th day of October, 1927."

The appellee Prassel Sash & Door Company furnished material to the contractors which entered into the building, and instituted this suit against appellant on the bond above copied to recover the amount owing it for such material, together with attorneys' fees. The other appellees intervened in the suit, declaring upon accounts for material furnished to the contractors which entered into the building. Upon the trial in the court below, the appellees were awarded judgments against appellant for the amounts of their respective claims, with attorneys' fees. No judgment was sought or obtained against the principals on the bond, because they were actually and notoriously insolvent.

The case was tried on agreed facts, the controlling facts being (1) that the contractors, J. R. Horn & Sons, were indebted to the several appellees in the respective amounts set forth in the agreement; (2) that such indebtedness was on account of labor and (or) material furnished the contractors by each of the appellees under contracts made after the execution of the bond; (3) that the reasonable attorneys' fees of the respective appellees were in the amounts specified in the agreement, not necessary to state here; (4) that none of the appellees filed with the contractor or with the county clerk of Upton county any claim for material itemized and sworn to by the owner or his authorized agent within 30 days after date of the delivery of the material; and (5) that the contractors abandoned the contract on April 2, 1928, and the school district completed the building at a cost not in excess of the unpaid part of the purchase price.

The controlling question of law presented is, Were the appellees entitled to recover against the surety on the bond, notwithstanding the agreed fact that none of them filed with the contractors or the county clerk of Upton county any itemized verified claim within 30 days after furnishing the material? The suit was brought on the theory that the bond was a common-law obligation, which would authorize a judgment in favor of appellees according to its terms, irrespective of any statutory provisions on the subject, and that a compliance with the statutory provisions is not a prerequisite to the right to maintain a suit on the bond. The statute relating to bonds in connection with public contracts in effect at the time the rights of the parties hereto were fixed is article 5160 of the Revised Statutes of 1925, as amended by the Acts of the Fortieth Legislature, 1927, at its First Called Session, c. 39, p. 114, and, omitting the caption and emergency clause, reads as follows:

"Any person or persons, firm or corporation, entering into a formal contract with this State or its counties or school districts or for subdivisions thereof or any municipality therein for the construction of any public building or the prosecution and completion of any public work, shall be required, before commencing such work, to execute the usual penal bond, with the additional obligation that such contractor shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in said contract. Any person, company or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the state or any municipality on the bond of the contractor, and to have their rights and claims adjudicated in said action and judgment rendered thereon, subject however, to the priority of the claims and judgments of the State or municipality. If the full amount of the liability or the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the state or municipality, the remainder shall be distributed pro rata among said intervenors. Provided further, that no person, or persons, firm or corporation shall be secured in the payment of any claim contracted prior to the execution of the contract that said bond is given to secure, and provided further that all claims for labor shall be itemized and sworn to by the owner or his authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted within thirty days from the date that said claim accrued and became payable, and all claims for material shall be itemized and sworn to by the owner or his authorized agent and filed with the contractor or with the county clerk of the county in which said work is being prosecuted within thirty days from the date of the delivery of said material; and any claim filed after said thirty days shall not be secured by said bond."

That the parties entering into the contract and executing the bond intended to comply with the statute above quoted seems clear to us. The bond was required by the statute. It was written on the reverse side of the contract. The amount thereof was exactly 50 per cent. of the contract price, as required by the statute. In so far as it protects laborers and materialmen performing labor and furnishing material entering into the erection of the building, the provisions of the bond accomplish exactly what the statute provides should be accomplished, viz. the protection of laborers and materialmen who comply with the requirements of the statute by filing their claims as therein directed. Appellees point

out and stress the particulars in which they claim the bond differs from that required by the statute. We are unable to give any controlling effect to these alleged variations. The fact that the bond may go further than the statute requires and protect others than laborers and materialmen does not operate to relieve laborers and materialmen from complying with the requirements of the statute for fixing the liability of the surety as to them. Let it be granted, as contended by appellees, that one furnishing money to the contractors with which to pay for labor and materials is protected by the bond without filing a claim within 30 days. Does it follow that laborers and materialmen are, on that account, relieved from that duty? We think not. The Legislature had in mind the protection of those who labor or furnish material entering into a public improvement, and undertook only to accomplish that result. It did not undertake to afford protection to, or prescribe the duties of, others than laborers and materialmen.

It is a rule of general application that the law is a part of every contract. Had the bond in the instant case not contained a provision protecting laborers and materialmen, the statute would have been read into it. Trinity Portland Cement Co. v. Lion Bonding Co. (Tex. Com. App.) 229 S. W. 483; Foust v. Bibb (Tex. Civ. App.) 258 S. W. 921; American Surety Co. of New York v. Foust (Tex. Com. App.) 272 S. W. 445; Globe Indemnity Ins. Co. v. Barnes (Tex. Com. App.) 288 S. W. 527; Van Zandt v. Desdemona Ind. School Dist. (Tex. Civ. App.) 283 S. W. 626.

The fact that the bond does afford protection for those whom the statute requires to be protected could not operate to read the statute out of it. So to hold would be tantamount to holding that the statute is a part of the bond, if the bond, by its terms, fails to afford the minimum of protection provided by the statute, but that it is not a part of the bond if the bond, by its terms, affords the very protection provided for as a minimum by the statute. In other words, sureties who execute bonds expressly affording the protection required by law occupy a less advantageous position than those who undertake to limit their statutory liability. We believe that the bond must be considered just as if it contained within its terms the express provision that "any claim filed after said thirty days shall not be secured by said bond." The question is analogous to that of fixing liability of one secondarily liable on a negotiable instrument. The obligation executed may on its face refer to no prerequisite to fixing liability. Still, the statute with reference thereto will be read into the instrument, just as statutes of limitation are read into all instruments.

The contention of appellees that the bond alone must be looked to in determining the li-

ability of the surety and the rights of the parties protected thereby would lead to the conclusion that, had the cost to the school district of completing the abandoned contract exceeded the contract price by an amount equal to the penal sum of the bond, the amount of recovery against the surety should be prorated between the school district and appellees, notwithstanding the provision of the statute giving priority to the school district. To ascribe to the trustees the intention of requiring a bond having that legal effect would be to impute to them the purpose, not only to incur for the school district an unnecessary risk, but also to fail to obey the law, for they were required by the statute above copied to exact a bond in which the school district would have priority over laborers and materialmen. Such a purpose and intention cannot be imputed to them. On the contrary, we must impute to them the purpose and intention of exacting the character of bond required of them by the statute. If they did this, and we think they did, then appellees' rights to recover thereon are governed by this same statute.

Many cases are relied on by appellees. A few of the leading ones will be noticed. The cases of Watkins v. Minter, 107 Tex. 428, 180 S. W. 227, and United States v. Hodson, 10 Wall. 395, 19 L. Ed. 937, involved the validity of bonds which contained obligations different from those prescribed by statute, and in each case the validity thereof as a common-law obligation was upheld. We have not a question of validity of a bond nor of the rights of those protected by the terms of the bond concerning whom the statute above quoted is silent, but our question concerns those only who are required by the statute to perform a certain act in order to fix the liability of the surety on a bond.

The cases of Williams v. Baldwin (Tex. Com. App.) 228 S. W. 554, Southern Surety Co. v. Nalle (Tex. Com. App.) 242 S. W. 197, United States Fidelity & Guaranty Co. v. Henderson County (Tex. Com. App.) 276 S. W. 203, and other cases of a similar nature, were cases in which the statutes under which the bonds had been given were declared unconstitutional as an unwarranted interference with the right of contract. Recovery was upheld against the sureties on such bonds. In those cases it was not shown that the act of the owner in taking the bond was not voluntary, but was because of statutory compulsion. We think those cases are clearly distinguishable from the instant case, in that in them there was no statute to read into the bond. The statute had been declared unconstitutional, and the situation between the parties was as if no statute had ever existed relating to the subject-matter of the contract. Those cases, in our opinion, are not authority for the contention that a valid statute should not be read into the contract.

The case of Indemnity Insurance Co. of North America v. South Texas Lumber Co. et al. (Tex. Civ. App.) 19 S.W.(2d) 913, affords some support for appellees' contention. A writ of error has been granted in that case. Notwithstanding our great respect for the court rendering that opinion and the Chief Justice writing it, we cannot agree with some of the conclusions there announced. We believe that decision is in conflict with the decision of this court in Van Zandt v. Desdemona Independent School District, supra, and the cases cited in our opinion in that case.

There is no disputed issue of fact in the record, and the case has been fully developed. If we are correct in our determination of the controlling question of law presented, judgment should have been rendered for appellant. It is therefore our order that the judgment of the trial court be reversed, and that judgment be here rendered in favor of appellant against all of the appellees that they take nothing by their suit.

Reversed and rendered.