EMPLOYERS LIABILITY ASSURANCE CORPORATION, LIMITED, V. YOUNG COUNTY LUMBER COMPANY ET AL.

No. 6106. Decided November 1, 1933.
(64 S. W., 2d Series, 339.)

648

*W. B. Handley,* of Dallas, for appellant.

The pleas in abatement should have been sustained by the trial court under the plain provisions of the statute, the allegations of the pleas, and the evidence supporting such allegations. Moreover, these pleas should have been sustained under the authorities of Fennell v. Trinity Portland Cement Co. (Civ. App.), 209 S. W., 796; American Surety Co. v. Alamo Iron Works (Civ. App.), 29 S. W. (2d) 493; Article 5161, R. S., 1925.

On the question of the right of appellees to recover on any of the bonds on account of their failure to itemize, verify and file their claims with the county clerk appellant cites: Fidelity & Deposit Co. of Md. v. Prassel Sash & Door Co. (Civ. App.), 24 S. W. (2d) 539; Pearson Lbr. Co. v. Cooper (Civ. App.), 54 S. W. (2d) 231 (writs of error refused in both of these cases); 7 Texas Jur., p. 73.

*O. M. Wylie* and *Edwin S. Weldon*, of Archer City, *Bullington, Humphrey & King* and *Paul Speer*, of Wichita Falls, and *S. A. Penix*, of Graham, for appellees.

The trial court did not err in overruling defendant's amended plea in abatement for the reason that plaintiff's, Young County Lumber Co., suit was prematurely brought in that six months from final completion and settlement of contract between Archer County and the original contractor had not elapsed, for the reason that the subcontractors had abandoned and quit their said contract, and that the plaintiff had a right to bring and maintain his suit in the District Court of Archer County, under article 5162 and its amendments. Acts 41st Leg., p. 452; Burns v. True, 5 Texas Civ. App., 74, 24 S. W., 338; Morgan v. Bement (Civ. App.), 59 S. W., 907; Bryan College Interurban Ry. Co. v. Kropp (Civ. App.), 197 S. W., 733.

Under article 5472a-b the creditors of a sub-contractor for public improvements are not protected by that law but that same is for the protection of creditors of contractors with the state and counties only. Texas Co. v. Schriewer (Civ. App.), 38 S. W. (2d) 141; Huddleston & Work v. Kennedy, 122 Texas, 182, 53 S. W. (2d) 1009; Smith v. Jacksboro Stone Products Co. (Civ. App.), 41 S. W. (2d) 347.

MR. JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

Certified questions are presented by the Court of Civil Appeals for the Second Supreme Judicial District in the following certificate:

"On February 15, 1929, John T. Ables entered into a contract with Archer County by the terms of which he bound himself at his own cost and expense to do all the work necessary for the improvement of what is known as Scotland Lateral Road in said county in accordance with certain specifications attached to the contract, for a total consideration of $89,090.53. To insure the faithful performance of the contract Ables executed a bond with the Employers' Liability Assurance Corporation, Limited, as surety, in accordance with the requirements of article 5160, Revised Civil Statutes, as amended by the 41st Legislature in 1929.

"On March 12, 1929, John T. Ables sublet a part of the work to be done by him to Alderson & Smith, a partnership composed of Wm. Alderson and D. M. Smith, by a contract in writing which bound the subcontractors to perform the same.

"On November 15, 1929, Alderson and Smith executed a bond with the Employers' Liability Assurance Corporation, Limited, for the payment to certain claimants of the amounts therein specified, which recited the amounts owing by the subcontractors to those parties for labor performed and material furnished to them in the performance of the work undertaken by them under the contract with Ables. The bond recites that those claimants had filed their claims with the County Judge of Archer County and that the bond was given to enable the subcontractors to collect from Archer County the amounts due those claimants. The bond further recites that the principals and surety bound themselves to pay to those claimants 'the amounts of the liens so claimed by them with all costs, in the event same shall be proven to be liens upon the property against which said obligees assert their liens, namely, the moneys due and to become due John T. Ables under his original contract with Archer County, Texas.'

"The bond further recites that it was given under the provisions of 'article 5472-C, Revised Civil Statutes of 1929, being Act of the 41st Legislature, regular session of 1929, page 457, chapter 211.' The bond was approved by the County Judge of Archer County on November 21, 1929, and was duly filed and recorded on the same day in the records of Archer County. Upon the filing of the same the county paid over to the subcontractors a sufficient amount to cover all the claims recited.

"On January 27, 1930, John T. Ables, with the Employers' Liability Assurance Corporation, Limited, as surety, gave a like bond in favor of certain other persons who had furnished service and labor in the construction of the road improvements,

the names and amounts due each being set out in the bond. The principal and surety bound themselves to pay to the claimants or their assigns the 'amounts of their respective claims, or such portion or portions thereof as may be proved to have been levied under the terms of chapter 17, General Laws of the State of Texas, passed by the regular session of the 39th Legislature, and all court costs adjudged against the principal in actions brought by claimant or claimants hereon.'

"The bond further recites that Ables was executing and filing the same because he desired to file with Archer County, Texas, a bond pursuant to and conditioned as provided by Act of the 41st Legislature, second called session, page 154, chapter 78, now known as article 5472-B-1, Rev. Civ. Statutes, 1925. And it was filed and approved by the county judge of Archer County on February 12, 1930. After the same was given Archer County paid over to Ables the aggregate amount of all the claims listed in the bond.

"All three of the bonds above mentioned will accompany this certificate.

"The road improvement undertaken by Ables was finished and Archer County made final settlement with him on May 12, 1930.

"This suit was instituted by the Young County Lumber Company against John T. Ables, the contractor, Alderson & Smith, subcontractors, the Employers' Liability Assurance Corporation, Limited, the surety on all of the bonds above mentioned, and Archer County and the County Judge and County Commissioners of said County, to recover the amount due it for material furnished in the construction of said road work undertaken by Ables, aggregating $5,638.30, the claim for which had been listed in the replevin bond executed by the subtractors noted above, and which the subcontractors and their surety had specifically agreed to pay. O. F. Ludwell, B. J. Frerich, J. E. Duncan, B. O. Bagley, Frank Birkenfeld, J. W. Marriott, R. T. Isabell, Ralph Hoeffner, J. B. Meeks, J. A. McDaniel, W. V. Weinzapfel, Joe Gonzales, F. M. Cross, L. C. Barnett, F. C. Teichman all filed pleas of intervention, seeking to recover amounts due for labor and material furnished to Ables and the subcontractors in the road improvement work, all of whom were made payees in one or the other of the replevin bonds, noted above.

"Upon the trial of the case all of the defendants named in the suit were dismissed by agreement of all the parties save and except the Employers' Liability Assurance Corporation,

Limited, and judgment was rendered against it in favor of plaintiff and the interveners for the respective amounts of their claims, above noted. From that judgment the surety company has prosecuted this appeal.

"The interventions were all filed within the six months period next succeeding the completion of the work and settlement made by the county with Ables, the contractor, with the exception of J. B. Frerich, whose intervention was filed November 12, 1930, that being the date of expiration of said six months period.

"Plaintiff's original petition was made returnable to the May term, 1930, but the date of filing is not shown in the record. Its first amended original petition, on which the suit was tried, was filed August 4, 1930.

"The surety company filed pleas in abatement of the suit of plaintiff and all of the interveners, based upon the provisions of article 5472-B-1, vol. 16, Vernon's Ann. Texas Civil Statutes, and article 5161, Rev. Statutes of 1925.

"The evidence showed that neither the plaintiff nor any of the interveners ever filed with the county clerk their claims for labor and material as provided in article 5160, vol. 15, Vernon's Ann. Civil Statutes, and the failure to so file the same was pleaded as a bar to the suit by the plaintiff and also the actions of the interveners named. Another plea filed by appellant was a plea of limitation to the suits upon the replevin bonds by all of the interveners except W. V. Weinzapfel and G. C. Barnett, based on the provisions of article 5472-B-1, because those interventions were filed within six months from the date of the filing of said bonds. Interveners Weinzapfel and Barnett were not named as payees of either of said bonds.

"We have been unable to reach any satisfactory conclusion upon the defense last noted, and we deem it advisable to certify to your Honors the following questions:

"1. Did the trial court err in overruling appellants' pleas in abatement?

"2. Was there error in overruling the defenses of limitation, noted above?

"3. Was the failure of the plaintiff and the interveners to file their claims with the county clerk to be recorded in the mechanic's lien records as required by article 5160, a bar to a recovery on any of the bonds executed by appellant?

"4. Should the replevin bond filed by Ables reciting that it was given under the provisions of 5472-C, which apparently was not applicable to Ables' contract with the county, be con-

strued as though it had been given under the provisions of article 5472-B-1, as insisted by appellant?

"5. If by reason of the facts involved and the statutes referred to, the bonds sued on, considered exclusively as statutory obligations, could not support any of the judgments rendered, then were such bonds available to such appellees as common law obligations, in support of the judgments rendered?

"We will note further that in reply to appellant's plea in abatement, appellees call attention to their pleadings embodying allegations to the effect that the contractor abandoned the work before its completion, and that the same was thereafter completed by appellant. And testimony is cited which it is claimed conclusively sustained that plea, and by reason of that fact and the provisions of article 5162, Rev. Civ. Statutes of 1925, their suits on the contractors bond with the county were not prematurely instituted. However, the record indicates that the trial judge did not pass on that question."

Since the certificate states that the three bonds will accompany it, and they are contained in the statement of facts, which, with the transcript, does accompany the certificate, the bonds as appearing in the statement of facts will be treated as a part of the certificate. For convenience the first of the bonds will be referred to as the contractor's bond, and the other two as the replevin bonds.

■ It is necessary to a clear understanding of the questions presented to observe that the bonds sued upon were executed under two separate statutes, and that the pleas in abatement referred to in the first question certified are presented on account of the provisions of but one of the statutes, and that the plea of limitation is filed under and on account of the other of the two statutes. Since the first two questions certified turn upon the state and nature of the pleadings, we may interpret and answer them in the light of the pleadings as appearing in the transcript. See Watkins v. Minter, 107 Texas, 428, 180 S. W., 227.

The amended plea in abatement of appellant, which apparently is directed to the petitions of both of the original plaintiffs, and to the petitions of the several interveners, presents the contention that the suits and the interventions were prematurely filed insofar as they seek recovery on the contractor's bond, because six months from the completion and settlement of the contract had not elapsed either when the suits were filed or when the petitions in intervention were filed. This plea in abatement contains the further allegations that the contractor,

Ables, did not quit or abandon the contract with Archer County before consummation of such contract.

The certificate states that the road improvement undertaken by the contractor was finished and Archer County made final settlement with him on May 12, 1930, that the original petition of appellee Young County Lumber Company was made returnable to the May term, 1930, the date of its filing not appearing in the record, that said appellee's amended petition was filed August 4, 1930, and that all the pleas in intervention were filed within six months from the completion of the work and the settlement between the contractor and the county, except that one of the pleas in intervention was filed November 12, 1930, the date of the expiration of the six months period. The transcript shows that the petition of the other original plaintiff, Ludwell, was filed June 9, 1930. His suit was consolidated with that of appellee Young County Lumber Company on November 10, 1930. The case was tried and judgment rendered in district court on November 12, 1930. It is further stated in the certificate that the trial judge did not pass on the question whether the contractor abandoned the work before its completion, meaning apparently that the trial judge made no express finding on this issue when the plea in abatement was overruled.

The plea in abatement is based upon Article 5161, Revised Civil Statutes of 1925, which is the second section of the original act as passed in 1913. The first section of the act, now Article 5160, requires any person or corporation entering into a contract with the state or with any county, school district, etc., for the construction of any public building or the prosecution and completion of any public work, to execute the usual penal bond, containing, however, the additional obligation to make prompt payments to all persons supplying labor or material. This section gives such persons the right to intervene in any suit brought by the State or municipality on the bond, and to have their rights adjudicated therein, subject, however, to the priority of the claims and judgment of the State or municipality.

Section 2 of the act, now Article 5161, is as follows:

"If no suit should be brought by the State or municipality within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the State or municipality that labor or materials for the prosecution of such work has been

supplied by him or them, and the payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action for his or their use and benefit, against said contractor and his surety, and to prosecute the same to final judgment and execution."

It is by virtue of the language of this section that appellant contends that the suits and interventions were premature because filed within six months from the completion and final settlement of the contract, and that the plea in abatement, therefore, should have been sustained and the suits and interventions dismissed.

Section 3 of the act, now Article 5162, provides that suit of any such creditor on the bond of the contractor shall not be commenced until the complete performance and final settlement of the contract, and that it shall be commenced within one year after such complete performance and final settlement; and this section provides further that "if the contractor quits or abandons the contract before its consummation, suit may be instituted by any such creditors on the bond of the contractor and shall be commenced within one year after abandonment of said contract and not later."

The several sections or articles above referred to are parts of one statute and must be construed together. The right of materialmen and laborers to maintain actions on the bond given by the contractor to the State or municipality has its source in that part of Article 5160 which makes them beneficiaries or obligees in the contractor's bond. This right thus given, however, is subject to limitations and restrictions imposed by the statute giving the right. The statute in its several sections fixes the time and the manner in which the right may be exercised. The three articles construed together lay out the following plan: The primary right to sue and recover on the bond is given to the State or municipality. A period of six months from and after the completion and final settlement of the contract is fixed within which suit on the bond may be instituted by the state or municipality and not by a materialman or laborer; but in such suit so instituted any materialman or laborer may intervene even within the six months period. No right to file an independent suit is given to laborers or materialmen until after the expiration of the six months, but after the expiration of such period, if no suit has been brought by the State or municipality, any materialman or laborer may institute suit on the bond and prosecute the same to final judg-

ment. This plan is in furtherance of two of the declared purposes of the statute, namely, that the State or municipality shall have the primary right to sue upon the bond and that there shall be but one suit in which the various laborers and materialmen may file their claims. Exception is made in the event the contractor abandons the contract before its consummation, in that at any time within one year after such abandonment any creditor may institute suit on the bond.

If it be assumed that there was no abandonment of the contract before its consummation, then both of the original petitions and all of the petitions in intervention were prematurely filed because they were in behalf of materialmen and laborers and were filed within six months from May 12, 1930, the date when, according to the certificate, the road improvement was finished and final settlement made with the contractor by the county. The case was tried and judgment rendered on November 12, 1930, the last day of the six months period. Thus the suit was both filed and tried within the six months. In the absence of evidence sufficient to establish abandonment of the contract by the contractor before its consummation, the plea in abatement to the two original suits and the several petitions in intervention should have been sustained.

It is suggested that such apparently strict construction of the statute should perhaps not be applied in a case where, as here, there is no evidence that the county has a claim which it desires to assert, or that any laborers or materialmen have, by reason of the early filing and trial of the suit, been deprived of an opportunity to present their claims, and where the plaintiffs and interveners might have been able in one more day after the day on which the case was tried to have defeated the claim of prematureness by filing amended pleadings. The answer is that we are dealing with restrictions and conditions imposed by the very statute which creates the right, and those restrictions and conditions may not be relaxed or modified to avoid what may appear to be too strict or narrow a rule in a particular case. Such departure from the statute in one case would justify similar action in a case somewhat different and by such course the statute would be modified and even nullified.

"The general rule is that where the cause of action and remedy for its enforcement are derived not from the common law, but from the statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable." Mingus v. Wadley, 115 Texas, 551, 285 S. W., 1084.

■ There remains the issue of abandonment of the contract. The action of the trial court in overruling the plea in abatement may be sustained, if on the hearing of the plea there was evidence sufficient to support a finding that the contractor quit or abandoned the contract before its consummation, and that this occurred before the suits and petitions in intervention were filed. The statement in the certificate that the road improvement undertaken by the contractor was finished and that Archer County made final settlement with him on May 12, 1930, when read in connection with the last paragraph of the certificate, does not necessarily mean that no such abandonment occurred. Since the certificate does not affirmatively show whether there was or was not an abandonment of the contract, a categorical answer to the first question certified cannot be given. Certified questions may be answered only in the light of the certified facts. See Goldstein v. Union National Bank, 109 Texas, 555, 213 S. W., 584; Fort Worth Improvement District No. 1 v. City of Fort Worth, 106 Texas, 148, 158 S. W., 164; Philadelphia Underwriters Agency, etc. v. Driggers, 111 Texas, 392, 238 S. W., 633.

■ The first question is answered: The trial court did not err in overruling the plea in abatement, if there was evidence sufficient to support a finding that before the suits and interventions were filed the contractor quit or abandoned the contract prior to its consummation; otherwise, the trial court did err in overruling said plea.

Two other grounds of abatement are urged in the amended plea in abatement, one being that notice of the pendency of the suit has not been given as required by Article 5164, and the other that there is a misjoinder of causes of action. As to the first of these, the certificate does not show whether or not the notice was given. Furthermore, it appears from the argument filed by appellant in this court and its brief filed in the Court of Civil Appeals that appellant is presenting in its appeal but the one ground of abatement which has hereinbefore been discussed.

The plea of limitation referred to in the second question in the certificate is that the causes of action of the plaintiffs and all interveners upon the two replevin bonds are barred by the six months limitation period prescribed by Article 5472b-1, Revised Civil Statutes, in that such parties and each of them failed to sue within six months from the dates of the filing of the bonds.

What appears as Article 5472b-1 of Vernon's Annotated

Statutes is Chapter 78 of the Acts of the Second Called Session of the 41st Legislature (p. 154). This act is amendatory of, or additional to, Articles 5472a and 5472b of the Revised Civil Statutes of 1925, being Chapter 17 of the Acts of the Regular Session of the 39th Legislature (p. 44). The law last referred to gives to anyone furnishing material, apparatus or labor to any contractor for public improvements in the state a lien on moneys, bonds, or warrants due or to become due to the contractor for such improvements, and provides that the lien shall be fixed by giving notice in writing to the official of the state, county, town or municipality whose duty it is to pay the contractor, requiring such public official after the notice to retain enough of the money, bonds, or warrants to pay the claim. The later act, Article 5472b-1, permits the contractor to obtain the release and payment to him of the moneys, bonds or warrants thus retained by giving and filing with the proper official a surety company bond payable to the claimant or claimants who have asserted their liens, the bond being conditioned for the payment of the claim or claims, or such part of the same as may be proven to be secured by liens filed under Articles 5472a and 5472b. The first part of the second section of Article 5472b-1 is as follows:

"At any time within six months from the date of filing of said surety bond, the party making or holding such claim or claims may sue upon such bond, *but no action shall be brought on such bond after the expiration of such period.* One action upon said bond shall not exhaust the remedy thereon, but each obligee or assignee of an obligee named therein may maintain *a separate suit thereon in any court and in any jurisdiction.*" (Italics ours).

In answering the second question certified, it will be assumed, as hereinafter concluded, that not only the second, but also the first of the two replevin bonds was executed for the purpose of complying with Article 5472b-1, and that both bonds are in substantial compliance with said article.

■ Now, since the very statute, which permits the filing of such bonds and the withdrawal thereunder of the impounded money, and which gives to those who have caused the money to be impounded by filing notice of their claims the right to sue on the bonds, declares in positive language that the claimants may file suit or suits on the bonds within six months from their filing, but that "no action shall be brought on such bond after the expiration of such period," it necessarily follows that the limitation so prescribed is a complete bar to any suit brought

on the bond after the expiration of the six months. The article under consideration is a statute of limitation. Southern Surety Co. of New York v. First State Bank (Civ. App.), 54 S. W. (2d) 888, (application for writ of error refused).

The suit of appellee Young County Lumber Company is on the replevin bond which was approved and filed November 21, 1929. It cannot be said that the trial court erred in overruling the plea of limitation to its suit on said bond because the record before us does not show that the suit was filed more than six months after November 21, 1929. The certificate states that Young County Lumber Company's original petition was made returnable to the May term, 1930, but the date of its filing is not shown in the record. The other original plaintiff, Ludwell, sued upon the replevin bond which was approved and filed February 12, 1930. His petition was filed June 9, 1930. The plea of limitation against his suit on said bond was properly overruled.

Since Article 5472b-1 does not prohibit the filing of more than one suit on the bond, but permits each claimant, or obligee named in the bond, to maintain a separate suit, the filing of the several pleas in intervention must, for the purpose of determining the question of limitation, be treated as the filing of suits. It appears from the certificate that some of the interveners sued on one replevin bond and some on the other, and the certificate does not give the dates when the several petitions in intervention were filed. As we are not permitted to search the record to ascertain the facts essential for answering certified questions, our answer to the question whether the trial court erred in overruling the plea of limitation as to the petitions in intervention is that the plea of limitation should have been sustained as to those petitions in intervention which were not filed within six months from the date of the filing of the replevin bond sued upon and that the plea of limitation should have been overruled as to those petitions in intervention which were filed within six months from the date of the filing of the replevin bond sued upon.

The certificate states that none of the claimants has ever filed with the county clerk his itemized claim for labor or material as provided by Article 5160 and submits as the third question: "Was the failure of the plaintiff and the interveners to file their claims with the county clerk to be recorded in the mechanic's lien records as required by Article 5160 a bar to recovery on any of the bonds executed by plaintiff?"

There is no requirement for the filing of itemized claims

with the county clerk in Article 5472b-1 under which the two replevin bonds were executed, and the failure of plaintiffs and interveners to file their itemized claims in no way affects their rights to recover on those bonds.

The contractor's bond of date February 15, 1929, was executed in accordance with the requirements of Article 5160 as amended. That article as originally enacted did not provide for the filing of itemized claims with the county clerk. This requirements was added in 1927 by amendment to the effect that the owner shall file his itemized and sworn claim with the county clerk within thirty days from the date a claim for labor accrued and became payable, and within thirty days from the date of the delivery of the material. (Acts First Called Session, 40th Legislature, Chap. 39, p. 114). The amendment of 1927 also contained the following:

"And any claim filed after said thirty days shall not be secured by said bond."

Article 5160 was again amended by an act effective June 12, 1929 (Acts Regular Session, 41st Legislature, Chap. 226, p. 481). The amendment rewrites Article 5160, the important change being that instead of requiring itemized sworn claims to be filed in thirty days as in the amendment of 1927, it provides:

"Such claims shall be filed with the county clerk of the county in which said work is being prosecuted within ninety days from the date of the delivery of said material and the performance of said work."

There is no express proviso in the 1929 amendment, as there was in the 1927 amendment, that claims not so filed within the period named shall not be secured by the bond.

■ It is well settled by a number of decisions construing Article 5160 as amended in 1927 that no recovery may be had on the bond without the filing of the itemized and sworn statement with the county clerk within the specified time. See American Surety Company of New York v. Axtell Company, 120 Texas, 166, 36 S. W. (2d) 715; Aetna Casualty & Surety Company v. Woodward (Com. App.), 36 S. W. (2d) 721, 41 S. W. (2d) 674; American Surety Company v. Alamo Iron Works (Com. App.), 36 S. W. (2d) 714; Fidelity & Deposit Company of Maryland v. Prassel Sash & Door Co. (Civ. App.), 24 S. W. (2d) 539, (application for writ of error refused).

There are also a number of decisions holding that one who has furnished material or performed labor after the effective date of the 1929 amendment cannot recover on the contractor's

bond given under Article 5160 as so amended unless he has filed the itemized sworn statement within the ninety days. Among such decisions are the following: Standard Sanitary Manufacturing Co. v. Southern Surety Company of New York, 59 S. W. (2d) 291, (application for writ of error refused); Pearson Lumber Company v. Cooper, 54 S. W. (2d) 231, (application for writ of error refused); C. A. Dunham Company v. McKee, 57 S. W. (2d) 1132, (application for writ of error refused); Hardin v. McCarthy, 55 S. W. (2d) 1099, (application for writ of error dismissed); Texas Company v. Schriewer (Civ. App.), 38 S. W. (2d) 141, (affirmed on other grounds); Smith v. Texas Company (Com. App.), 53 S. W. (2d) 774.

In deciding this question the court, in the case of Standard Sanitary Manufacturing Company v. Southern Surety Company of New York, above cited, said:

"Under the last quoted provision of the above act we think it a necessary prerequisite to a recovery on a bond given in compliance with the terms of said act, by one who has furnished materials used in the construction of such public improvements, that an itemized sworn statement of such account be filed with the county clerk within ninety days from the date of the delivery of such materials. While the act does not, as did the Act of 1927 (Acts 1927, 40th Leg., 1st C. S., p. 114, ch. 39, Sec. 1), provide that any claims not so filed shall not be secured by such bond, yet we think it necessarily results that one who does not comply with the terms of the act which creates the right, shall not receive the benefits thereof." (Citing authorities).

In that case the Court of Civil Appeals affirmed the trial court's judgment denying the materialman recovery on the contractor's bond, and the application for writ of error was refused. We approve the decision in that case and the reason for it is above quoted. The language of the statute is plain and mandatory. It must be complied with or the action is not maintainable. See Mingus v. Wadley, 115 Texas, 551, 285 S. W., 1084.

■ The answer to the third question certified is, that the failure of the plaintiffs and interveners to file the itemized and sworn statements as required by Article 5160 as amended operates as a bar to recovery by them on the contractor's bond given under said article.

The first of the two replevin bonds recites that it is given under the provisions of "Article 5472c, Revised Civil Statutes of 1925, being Act of the 41st Legislature, Regular Session of

1929, p. 457, Chap. 211";· and the ·fourth question certified is whether said bond, although containing such recital, should be construed as if given under Article 5472b-1.

The reference in the 'bond to· Article 5472c was obviously made by mistake. That article is a different law from Article 5472b-1 dealing with ·a distinctly· different subject. It has to do with the execution of bonds to indemnify against liens upon property asserted by filing ·instruments for record under the statutes relating generally to mechanic's and materialmen's liens. It does not have to do with bonds given to obtain the release of· money on which liens have been fixed, or attempted to be fixed, by giving notice under the terms of Article 5472a and 5472b.

The facts certified, as well as the recitals in the bond, show that this bond was executed and filed because the claimants named as obligees had notified in writing the necessary public officials of Archer County of their claims originating under the subcontract and were claiming liens on the money due and to become due to the contractor from Archer County, and in order· to obtain the release of the money held by the county on account of said claims, and that upon the execution and approval of the bond the money was so released,—in short, that the bond was executed pursuant to Article 5472b-1 and that the interested parties were acting under that article.

■ The bond substantially complies with the ·terms and conditions of Article 5472b-1. It is executed by a corporate surety. It is made payable to the several claimants, giving their names and the amounts of the several claims. .It is in at least double the· amount of the claims. It is approved by the county judge. It is conditioned that the makers "shall pay to the paid obligees named or their assigns the amounts of·the liens so claimed by them with all costs, in the event the same shall be proven to be liens upon the property against which the obligees assert their liens, namely, the moneys due and to become due John T. Ables under his original contract with Archer County." Article 5472b-1 provides that the bonds shall be conditioned "substantially" that the makers "will pay to·the obligees named, or their assigns, the amount of the claim or claims, or such portion or portions thereof as may be proven to have been liens under the terms of Chapter 17, General Laws of the State of Texas, passed by the Regular Session of the 39th Legislature." There is no material difference between the condition in the bond and that named in the statute.. The bond, by the· language used, very clearly binds the makers to pay the amount

of the claim or claims that may be proven to be secured by liens on the money due the contractor from Archer County. The condition is to be read in the light of the recital in the bond in the very language of Article 5472a that the obligees have asserted their liens against this money "by notifying in writing the necessary public official of Archer County."

The reference in the bond to Article 5472c may be disregarded as surplusage, and when this is done the bond, because it undoubtedly was intended to be executed under, and is in substantial compliance with, Article 5472b-1, is to be sustained and construed as a statutory bond executed under said article.

"Where a bond contains not only all the statutory provisions and conditions but also other conditions or provisions not required, the unnecessary provisions will be treated as surplusage if they can be separated from the authorized portions without destroying the latter, and the bond will be sustained as statutory, in the absence of any enactment expressly or impliedly making it void." (Texas Jurisprudence, Sec. 16, p. 75, Vol. 7).

See also Standard Sanitary Manufacturing Company v. Southern Surety Company of New York, 59 S. W. (2d) 291, (application for writ of error refused); Fidelity & Deposit Company of Maryland v. Prassel Sash & Door Company, 24 S. W. (2d) 539, (application for writ of error refused).

The fourth certified question is answered in the affirmative.

The fifth question certified is as follows:

"If by reason of the facts involved and the statutes referred to, the bonds sued on, considered exclusively as statutory obligations, could not support any of the judgments rendered, then were such bonds available to such appellees as common law obligations, in support of the judgments rendered?"

This question is answered by Indemnity Insurance Company v. South Texas Lumber Company (Com. App.), 29 S. W. (2d) 1009. There a materialmen's suit upon a contractor's bond given under Article 5160 was filed more than a year after the completion and settlement of the contract. The Court of Civil Appeals held that the bond was not enforceable as a statutory bond because it contained obligations in addition to those required by the statute, but that it might be enforced as a common law obligation and without reference to the period of limitation prescribed by Article 5162. The Supreme Court, upon the recommendation of the Commission of Appeals, held that the suit upon the bond was barred by Article 5162, and reversed and rendered the judgments of the trial court and

Court of Civil Appeals. Judge Harvey, who wrote the opinion, said:

"Granting for present purposes that, independently of the above statutes, and in spite of them, a cause of action accrued to the lumber company on the bond, as a common-law bond, it by no means follows that the company has any other remedy than as prescribed in these statutes. As a general rule, where the statutes give a remedy for the enforcement of an independent right, the remedy thus given is regarded as cumulative of other existing remedies. But this rule has no application in case the statutes, which create the given remedy, clearly imply a negation of other remedies. Thouvenin v. Rodriques, 24 Texas, 479; Montel v. Consolidated Coal Co., 39 Md., 164; 1 Texas Jur., 688; 1 C. J., 988 et seq.

"The above statutes clearly imply that the remedy there accorded to the materialman, to enforce his cause of action arising under a bond such as the one here involved, whether the bond be regarded as a statutory bond or not, is exclusive, *and that his action on the bond is to be subject to the provisions of these statutes.*" (Italics ours).

The opinion in the case last cited was approved and followed in Standard Sanitary Manufacturing Company v. Southern Surety Company of New York, 59 S. W. (2d) 291, and in Pearson Lumber Company v. Cooper, 54 S. W. (2d) 231, in both of which cases application for writs of error were refused.

In Fidelity & Deposit Company v. Prassel Sash & Door Company, 24 S. W. (2d) 539, in which application for writ of error was refused, materialmen sued on the theory that the contractor's bond was a common law obligation which would authorize recovery according to its terms, irrespective of any statutory provisions and without compliance with that part of Article 5160 requiring the filing of itemized verified claims. The judgment of the trial court against the surety on the bond was reversed and rendered, it being held that, although the bond might go further than the statute required in protecting others than laborers or materialmen, nevertheless the materialmen could not recover on the bond without complying with the statute. In discussing the difference between the case before the court and the cases in which bonds have been enforced as common law obligations, Judge Hickman said:

"* * * We have not a question of validity of a bond nor of the rights of those protected by the terms of the bond concerning whom the statute above quoted is silent, but our question concerns those only who are required by the statute to perform

a certain act in order to fix the liability of the surety on a bond."

We are not dealing with statutes giving remedies for the enforcement of independent rights. The very rights asserted here are given by and arise out of the statutes which prescribe the method for enforcement of the rights. The bonds are valid and were executed in substantial compliance with the statutes. They were intended to be statutory bonds and the terms of the statutes under which they were executed are, in effect, to be read into the bonds.

The fifth question therefore should be answered: Recovery may not be had on the three bonds sued upon, irrespective of the statutes under which they were executed, or without compliance with the provisions of those statutes.

We therefore recommend that the questions certified be answered as indicated herein.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified.

C. M. CURETON, Chief Justice.